CITIZENS UTILITY BOARD, Senator Fred Risser and
Representative David Travis, Petitioners,

v.

James R. KLAUSER, Secretary of the Department of
Administration and Governor Tommy G. Thompson,
Respondents.

Supreme Court

*No. 94–1519–OA. Oral argument April 26, 1995.—Decided
June 30, 1995.*

(Also reported in 534 N.W.2d 608.)

For the petitioners there were briefs by *Lynn Adel-man* and *Adelman, Adelman & Murray, S.C.,* Milwaukee and oral argument by *Lynn Adelman.*

For the respondents the cause was argued by *Alan Lee,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

WILCOX, J. On June 13, 1994, the Citizens Utility Board, Senator Fred Risser and Representative David Travis (Petitioners) sought leave to commence

an original action against James R. Klauser, Secretary of the Department of Administration, and Tommy G. Thompson, the Governor (Respondents) pursuant to Art. VII, sec. 3(2) of the Wisconsin Constitution and sec. 809.70, STATS.[1] In this declaratory judgment action initiated pursuant to sec. 806.04, STATS., the issue presented for our consideration is whether the Wisconsin Constitution, empowering a governor to approve an appropriation bill "in part," permits the governor to strike a numerical sum appropriated in the bill and to insert a different, smaller number as the appropriated sum. We conclude that Art. V, sec. 10 of the Wisconsin Constitution permits the governor to act in such a fashion.

The facts in this action are not in dispute. The Wisconsin legislature passed the Executive Budget

---

[1] Article VII, sec. 3(2) of the Wisconsin Constitution provides: "The supreme court has appellate jurisdiction over all courts and may hear original actions and proceedings. The supreme court may issue all writs necessary in aid of its jurisdiction." Section 809.70(1), STATS., provides, in relevant part: "A person may request the supreme court to take jurisdiction of an original action by filing a petition which may be supported by a memorandum."

We granted the petition in this case on September 20, 1994, because the matter is *publici juris* and requires a prompt and authoritative determination by this court. Further, because the material facts are agreed to by the parties, the action is appropriate for disposition as a matter of law in an original proceeding. While recognizing a reluctance to take these cases as a matter of course, nonetheless, we have on several occasions taken original jurisdiction of actions concerning the governor's partial veto authority. *See, e.g., Wisconsin Senate v. Thompson,* 144 Wis. 2d 429, 434 n.3, 424 N.W.2d 385, 387 n.3 (1987); *State ex rel. Kleczka v. Conta,* 82 Wis. 2d 679, 683, 264 N.W.2d 539, 540 (1978).

Bill, 1993 Senate Bill 44, on July 16, 1993. On August 10, 1993, Governor Tommy G. Thompson approved the bill in part and objected to it in part. In at least nine instances, Governor Thompson crossed out dollar figures written in Arabic numerals and wrote in different, smaller numbers. The legislature did not attempt to override these partial vetoes by the governor.

Petitioners[2] subsequently brought this original action to specifically challenge only Governor Thompson's partial veto of the amount of appropriation in sec. 153 of the Executive Budget Bill. As presented to Governor Thompson, sec. 153 provided $350,000 for the Public Service Commission's intervention activities.[3] Governor Thompson drew lines through the "350,000" appropriation adopted by the legislature and wrote above the crossed out figures the number "250,000." The resulting veto appeared as follows:

## SECTION 153.

| Statute, Agency and Purpose | Source | Type | 1993–94 | 1994–95 | |
|---|---|---|---|---|---|
| 20.155 Public service commission | | | | | |
| (1) Regulation of Public Utilities | | | | | |
| (j) Intervenor financing | PR | A | 550,000 | ~~350,000~~ *250,000* | Vetoed in Part |

[2] At the initiation of this action, petitioner Citizens Utility Board (CUB) was a public interest advocacy body which frequently intervenes in cases before the Public Service Commission. Petitioner Risser was the Assistant Minority Leader of the Wisconsin State Senate and petitioner Travis was the Majority Leader of the Wisconsin State Assembly.

[3] According to the petition for leave to commence an original action, the Citizens Utility Board "relies heavily on intervenor financing."

Governor Thompson, pursuant to the mandates of Art. V, sec. 10(2)(b) of the Wisconsin Constitution,[4] forwarded to the legislature the following reason for his action:

Section 153 [as it relates to s. 20.155(1)(j)] provides $350,000 PR in fiscal year 1994–95 for intervenor financing. This is an increase of $150,000 PR over the current base.

I object to this increase in funding because an increase of more than $100,000 is too large. By lining out the Public Service Commission's s. 21.155(1)(j) appropriation and writing in the smaller amount of $250,000 PR in fiscal year 1994–95, I am vetoing the part of the bill which funds this provision. This will provide the Public Service Commission with adequate funding for intervention activities in that year. I am also requesting the Department of Administration Secretary not to allot these funds.

Article V, sec. 10(1) of the Wisconsin Constitution sets forth a governor's power to approve appropriation bills in whole or in part as follows:

**Governor to approve or veto bills; proceedings on veto.** Section 10(1)(a) Every bill

---

[4] Article V, sec. 10(2)(b) of the Wisconsin Constitution, provides:

The rejected part of an appropriation bill, together with the governor's objections in writing, shall be returned to the house in which the bill originated. The house of origin shall enter the objections at large upon the journal and proceed to reconsider the rejected part of the appropriation bill. If, after such reconsideration, two-thirds of the members present agree to approve the rejected part notwithstanding the objections of the governor, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if approved by two-thirds of the members present the rejected part shall become law.

which shall have passed the legislature shall, before it becomes a law, be presented to the governor.

 (b) If the governor approves and signs the bill, the bill shall become law. Appropriation bills may be approved in whole or in part by the governor and the part approved shall become law.

 (c) In approving an appropriation bill in part, the governor may not create a new word by rejecting individual letters in the words of the enrolled bill.

Petitioners contend that the above constitutional provision does not authorize the governor to write numerals or words into an appropriation bill. Rather, Petitioners maintain that the plain language of Art. V, sec. 10 of the constitution authorizes the governor either to approve an appropriation bill in whole, or to approve an appropriation bill in part, returning to the legislature the parts to which the governor objects. Approval, according to Petitioners, means to give one's consent; objection means disapproval or refusal to give consent.

The last sentence in subsection (1)(b), empowering a governor to "approve[ ] in whole or in part" an appropriation bill, was added to Art. V, sec. 10 of the constitution by a 1930 amendment. At the time Wisconsin approved the amendment, thirty-seven other states granted the governor the power to object to single items in appropriation bills, but no other state constitution utilized the word "part" instead of "item." *The Partial Veto in Wisconsin—An Update,* Informational Bulletin 87–IB–3 (August 1988).[5] Use of the

---

 [5] Presently, forty-three of the fifty states have a constitutional provision allowing the governor to exercise a veto in an appropriation bill. *See* THE BOOK OF THE STATES, 141–42 (1994). Of those forty-three, approximately ten allow the governor to reduce amounts in appropriation bills. *Id.*

partial veto[6] was minimal up until the early 1970's when it became a more popular tool to craft policy. For instance, in 1971, Governor Patrick J. Lucey was the first governor to use the partial veto to remove a single digit from an appropriation—thereby inventing the "digit veto." *Id.* at 4. And in 1983, Governor Anthony S. Earl invented another version of the partial veto—the "pick-a-letter veto" (the selective vetoing of letters to form a new word, or of digits to form a new number). *Id.* However, as the parties here readily admit, Governor Thompson has been the state's most prolific governor, in terms of both volume and creativity, in the exercise of his partial veto authority.

Since the time of the 1930 amendment to sec. 10, the supreme court has been called upon to consider the scope of the governor's partial veto power in six cases.[7]

---

[6] The text of the constitution does not use the word "veto." The word veto appearing in the title to sec. 10 is not part of the constitution but was added in reprints of the constitution after the constitution was adopted. This court, however, has referred to a governor's objection to or disapproval of part of an appropriation bill as a veto and, more specifically, as a partial veto. In the interests of consistency, we continue to use this terminology.

[7] It is the function of this court to develop and clarify the law. *See State v. McConnohie,* 113 Wis. 2d 362, 334 N.W.2d 903 (1983). As noted in *Wisconsin Senate v. Thompson,* 144 Wis. 2d 429, 436–37, 424 N.W.2d 385, 387 (1988):

Since *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed.60 (1803), it has been recognized that it is peculiarly the province of the judiciary to interpret the constitution and say what the law is. We deem it to be this court's duty to resolve disputes regarding the constitutional functions of different branches of state government; we may not avoid this duty simply because one or both parties are coordinate branches of government. *See Barnes v. Kline,* 759 F.2d 21 (D.C. Cir. 1984). It is the responsibility of the judiciary to act,

These cases, instructing that a governor wields a broad but not limitless power to object in part to an appropriation bill, necessarily form the basis for our resolution of this case. Thus, before examining the constitutionality of Governor Thompson's challenged partial veto in the present case, we must briefly review those six cases interpreting the governor's partial veto power.

In *State ex rel. Wisconsin Tel. Co. v. Henry,* 218 Wis. 302, 306–07, 260 N.W. 486, 489 (1935), the first case to construe the governor's power to object to part of an appropriation bill, the governor attempted to veto portions of an appropriation bill declaring legislative intent and creating an agency for administration of a fund. The plaintiff challenged the governor's veto on two grounds, claiming: (1) that the governor vetoed conditions the plaintiff asserted were inseparably connected with an appropriation; and (2) that the governor vetoed parts of the appropriation bill that had nothing to do with an appropriation. *Id.* at 309, 260 N.W. at 490.

The *Henry* court first concluded that the parts vetoed were not provisos or conditions inseparably connected to the appropriation bill.[8] *Id.* The court then concluded that the governor has the authority to object

notwithstanding the fact that the case involves political considerations or that final judgment may have practical consequences.

[8] The court later stated that the *Henry* case "does not hold that the governor cannot disapprove a condition placed upon an appropriation by the legislature." *State ex rel. Kleczka v. Conta,* 82 Wis. 2d 679, 713, 264 N.W.2d 539, 554 (1978). The court concluded that a governor may exercise the partial veto power by removing provisos and conditions to an appropriation so long as the net result of the partial veto is a complete, entire and workable bill which the legislature itself could have passed in the first instance. *Id.* at 715, 264 N.W.2d at 555.

to any separable part of an appropriation bill, even if it is not an appropriation. *Id.* at 314–15, 260 N.W. at 491–92. The court used a dictionary's broadly stated definition of the word "part," reasoning that the governor's power to object to a part of an appropriation bill was "intended to be as coextensive as the legislature's power to join and enact separable pieces of legislation in an appropriation bill." *Id.* at 315, 260 N.W. at 492. Wisconsin, the court explained, has no constitutional provisions prohibiting the legislature from passing general legislation that unites a number of unrelated subjects in one bill to increase the likelihood of the bill's approval. *Id.* Thus, the court suggested that the veto power allows the governor to approve or object to every separable piece of legislation in an appropriation bill to "prevent the evil consequences of improper joinder." *Id.* The question left unanswered by *Henry* was whether the portions vetoed need constitute a separable portion of the entire bill.

This court rendered its second interpretation of the governor's partial veto power in *State ex rel. Finnegan v. Dammann,* 220 Wis. 143, 264 N.W. 622 (1936). In *Finnegan,* the issue was raised as to whether a bill that did not include an appropriation was nonetheless an "appropriation bill" because it amended an existing law that indirectly affected fund appropriations by raising the permit fees of various types of motor carriers. *Id.* at 147–48, 264 N.W. at 624. The court concluded that the legislation was not an appropriation bill because there was no appropriation within the four corners of the bill. *Id.* at 147–48 264 N.W. at 624. In so concluding, the court adopted the following definitions as guideposts in determining whether a bill may be considered an appropriation:

494

"Appropriation bill. Govt. A measure before a legislative body authorizing the expenditure of public moneys and stipulating the amount, manner, and purpose of the various items of expenditure."

"An appropriation in the sense of the constitution means the setting apart a portion of the public funds for a public purpose."

"An appropriation is 'the setting aside from the public revenue of a certain sum of money for a specified object, *in such manner that the executive officers of the government are authorized to use that money, and no more, for that object, and no other.*' "

*Id.* (emphasis added).

In *State ex rel. Martin v. Zimmerman,* 233 Wis. 442, 289 N.W. 662 (1940), the court addressed the question of the governor's use of the partial veto power following adjournment by the legislature, but within the time limits set by the constitution. More important than the holding that the governor's partial veto was timely and authorized was the court's discussion concerning the purpose of the 1930 amendment to sec. 10:

Its purpose was to prevent, if possible, the adoption of omnibus appropriation bills, log-rolling, the practice of jumbling together in one act inconsistent subjects in order to force a passage by uniting minorities with different interests when the particular provisions could not pass on their separate merits, with riders of objectionable legislation attached to general appropriation bills in order to force the governor to veto the entire bill and thus stop the wheels of government or approve the obnoxious act. Very definite evils were inherent in the law-making processes in connection with appropriation measures.

*Id.* at 447–48, 289 N.W. at 664.

Thirty-six years passed before the court was again called on to consider the partial veto power of the governor. In *State ex rel. Sundby v. Adamany,* 71 Wis. 2d 118, 237 N.W.2d 910 (1976), Governor Patrick Lucey vetoed parts of nonappropriation language from an appropriation bill providing for local referenda. *Id.* at 121–24, 237 N.W.2d at 911–12. "In substance, the governor's veto made mandatory the local referendums which the bill, as passed by the legislature, made optional." *Id.* at 124, 237 N.W.2d at 912. Before deciding the narrow issue of severability presented, the *Sundby* court summarized *Henry, Martin,* and *Finnegan. Id.* at 128–31, 237 N.W.2d at 915–16. The court then noted that the governor has a distinct and constitutionally recognized role in the legislative process as prescribed by Art. V, sec. 4 of the Wisconsin Constitution. *Id.* at 131–134, 237 N.W.2d at 916–918. Finally, the *Sundby* court rejected the argument that the governor may negate what the legislature creates but may not affirmatively change the result intended by the legislature. The court was unimpressed with this subjective distinction, explaining that "[e]very veto has both a negative and affirmative ring about it. There is always a change in policy involved." *Id.* at 134, 237 N.W.2d at 918.

In *State ex rel. Kleczka v. Conta,* 82 Wis. 2d 679, 264 N.W.2d 539 (1978), the court upheld the governor's power to strike words and clauses from an appropriation bill, thereby significantly altering the legislative intent of the appropriation bill. As originally proposed by the legislature, the bill required taxpayers to add one dollar to their tax liabilities if they wished that sum to be used for the state campaign fund. *Id.* at 685, 264 N.W.2d at 541. Using the partial veto, Acting Governor Martin Schreiber changed the section to enable

the taxpayer to direct that $1 of their existing tax liability be allocated to the fund. *Id.*

The *Kleczka* court identified severability as the test of partial veto validity and reasoned that severability must be determined as a matter of substance rather than form. *Id.* at 705, 264 N.W.2d at 550. Further, harkening back to the language in *Henry,* the test for severability is met upon a determination that a complete, entire, and workable law remains after the governor's partial veto exercise. *Id.* at 706–07, 264 N.W.2d at 550–51. "The power of the Governor to disassemble the law is coextensive with the power of the Legislature to assemble its provisions initially." *Id.* at 707–08, 264 N.W.2d at 551. Finally, the court abandoned an intimation in *Henry* and *Sundby* that parts constituting conditions, contingencies or provisos imposed by the legislature could not be vetoed: "Under the Wisconsin Constitution, the governor may exercise his partial-veto power by removing provisos and conditions to an appropriation so long as the net result of the partial veto is a complete, entire, and workable bill which the legislature itself could have passed in the first instance." *Id.* at 715, 264 N.W.2d at 555.

Justice Connor T. Hansen, dissenting in *Kleczka,* argued that the court should adopt a more limited interpretation of the governor's partial veto power. Hansen first noted that because our constitution provides for three branches of government, separate and co-ordinate, "[n]one may perform the functions or exercise the powers of another." *Id.* at 718, 264 N.W.2d at 556 (Hansen, J., dissenting). Hansen sought "some palpable limit to the power of the governor to rewrite" because "[o]nly the limitations on one's imagination fix the outer limits of the exercise of the partial veto power . . .." *Id.* at 719, 264 N.W.2d at 557. Looking back to the

497

original purpose underlying the amendment to sec. 10 of the constitution, Hansen contended that the partial veto power should be exercised only with regard "to the individual components, capable of separate enactment, which have been joined together by the legislature in an appropriation bill." *Id.* at 726, 264 N.W.2d at 560. The portions stricken must be capable of standing as a complete and workable bill. *Id.* In sum, Hansen suggested that the partial veto power should be limited to grammatically and structurally distinct portions of legislation, thereby creating an objective test which could be predictably applied. *Id.*

Finally, in *State ex rel. Wisconsin Senate v. Thompson,* 144 Wis. 2d 429, 424 N.W.2d 385 (1988), as predicted by Justice Hansen in his *Kleczka* dissent, the court concluded that the governor may exercise the partial veto power in an appropriation bill by vetoing phrases, words, word fragments, letters, and digits. In reaching this conclusion, the court also answered "the question of whether the governor may reduce a legislatively enacted appropriation." *Id.* at 456, 424 N.W.2d at 396. The court noted that this question had never been addressed or answered by our prior decisions interpreting the governor's partial veto authority over appropriation bills. *Id.* In answering the question, the court concluded:

> [C]onsistent with the broad constitutional power we have recognized the governor possesses with respect to vetoing single letters, words and parts of words in an appropriation bill, *that the governor has similar broad powers to reduce or eliminate numbers and amounts of appropriations in the budget bill.* The governor has been authorized by the legislature and the people in art. V, sec. 10 of our constitution to approve appropriation bills "in part."

> Again, the test in the veto of parts is simply whether what remains after the governor's veto is a complete and workable law.[9]

*Id.* at 457, 424 N.W.2d at 396 (emphasis added). The court also refused to accept an Attorney General opinion declaring that the governor acted inappropriately by striking a digit:

> [W]e reject the Attorney General's conclusion that the governor may not exercise his partial veto authority to reduce and thereby alter appropriation bills. Instead, we agree with the New Jersey court in *Karcher v. Karcher,* [479 A.2d 403 (1984)]. *We hold that a partial veto resulting in a reduction in an appropriation is precisely the sort of partial veto measure the governor of this state is authorized to take pursuant to art. V, sec. 10 Wis. Const.*

*Id.* at 461, 424 N.W.2d at 397 (emphasis added). Thus, for the first time, this court set forth a dichotomy between a governor's partial veto power over appropriation figures and over non-appropriation parts of an appropriation bill: a governor has the power to reduce an appropriation, whereas he may only strike out letters, digits or words in regard to non-appropriation concepts in the appropriation bill.[10] Consequently, any

----

[9] In addition to reaffirming the "workable law" standard, the court gave "explicit judicial recognition to the long-standing practical and administrative interpretation or *modus vivendi* between governors and legislatures, that the consequences of any partial veto must be a law that is germane to the topic or subject matter of the vetoed provisions." *Id.* at 437, 424 N.W.2d at 388.

[10] This determination in the *Wisconsin Senate* case points out that, contrary to the assertions of the dissent, *Wisconsin Senate* did indeed "make new law." As noted specifically by this court:

concerns that the dissent has with the "exception" set forth in *Wisconsin Senate*, are better addressed to a reconsideration of the underlying rationale of that case.

Although not addressing the precise issue of whether the governor may reduce appropriations by writing in different and smaller numbers than those passed by the legislature, the *Wisconsin Senate* presaged the issue in a footnote. The court stated:

> Because the question is not raised by the facts of this case or any of the vetoes specifically challenged, we do not decide the issue of whether the governor may reduce appropriations by writing in a different and smaller number than that passed by the legislature, rather than by adjusting the figures that the legislature had originally provided.

*See id.* at 461 n.17, 424 N.W.2d at 397 n.17. The court, however, quoted favorably from the *Karcher* case, wherein the governor of New Jersey changed a legislatively prescribed percentage and reduced an appropriation of aid limits from $140 million to $125 million, both of which were upheld by the New Jersey Supreme Court. *Id.*

The *Wisconsin Senate* case drew a vigorous dissent drafted by Justice William Bablitch and joined by Jus-

---

*With the exception of our conclusion upholding the exercise of the governor's partial veto powers resulting in the reduction of appropriations* and our making explicit what was implicit,—i.e., the germaneness requirement—this case makes no new law. Instead, we simply reaffirm our prior opinions which have placed Wisconsin in the singular position of having the most liberal and elastic constitutional provision—adopted almost 60 years ago—regarding the governor's partial veto authority over appropriation bills.

*Wisconsin Senate,* 144 Wis. 2d at 463, 424 N.W.2d at 398 (emphasis added).

500

tices Shirley Abrahamson and Donald Steinmetz. The dissent argued that an interpretation of Art. V, sec. 10 that allows the governor to delete individual letters could not have been the intent of the drafters of the provision or the voters who approved it. *Id.* at 466, 424 N.W.2d at 400 (Bablitch, J., dissenting in part and concurring in part). The dissent, however, did not quarrel with "that portion of the majority's holding which permits the veto of individual digits to effect a reduction in an appropriation. This power is properly subsumed within the governor's power to veto 'in part.' " *Id.* at 474, 424 N.W.2d at 403.

In response to the *Wisconsin Senate* case, the Wisconsin legislature proposed a constitutional amendment to Art. V, sec. 10. The amendment, subsequently approved in a 1990 referendum, prohibits the governor from "creat[ing] a new word by rejecting individual letters in the words of the enrolled bill." *See* Art. V, sec. 10(1)(c), Wis. Const. Thus, the amendment as ratified by the citizenry only limits the governor's veto of letters and keeps intact the *Wisconsin Senate* conclusion that the governor has the authority to "reduce or eliminate numbers and amounts of appropriations" and exercise a "partial veto resulting in a reduction in an appropriation."[11]

---

[11] Several different amendments were put forth by legislative leaders prior to the 1990 referendum. One of the amendments would have allowed the governor to reject individual digits in any appropriation number but would have prohibited the governor from: (1) increasing the amount of any appropriation; (2) writing in new appropriation amounts; and (3) vetoing individual letters. *See* S.J.R. 75, 1987–88 Wis. Legis. (1988). The Wisconsin Senate Committee on Judiciary and Consumer Affairs reported 1987 Senate Joint Resolution 75 to the full senate without recommendation on whether to approve the

As is evidenced by the above review of case law on the partial veto power of the governor, this court has, for better or for worse, broadly interpreted that power.[12] Article V, sec. 10 has been interpreted by this court as allowing the governor the following: (1) the power to veto words and phrases; (2) the power to veto letters to create new words (subsequently limited by the 1990 amendment); (3) the power to veto digits; and (4) the power to reduce appropriations. *See Wisconsin Senate,* 144 Wis. 2d at 457, 424 N.W.2d at 396. This court recognizes that the doctrine of *stare decisis* is fundamental to the decision-making process. Thus, our interpretation of the governor's powers deriving from Art. V, sec. 10, and put into focus by the facts in this proceeding, although involving an issue of first impression in this court, will likely come as a surprise to few.

amendment. *See* 1 BULLETIN OF THE PROCEEDINGS OF THE WISCONSIN LEGISLATURE, 1987–88 Sess. 181 (1988). The amendment was not approved by the senate and was never put to a vote of the public.

[12] Several commentators have noted that this court has, in the past, broadly interpreted Art. V, sec. 10 of the Wisconsin Constitution, thus conferring broad powers to the governor. *See* Richard Briffault, *Emerging Issues in State Constitutional Law,* 66 TEMP. L. REV. 1171, 1197 (1993) (Wisconsin governor has the broadest item veto power in the country); John S. Wietzer, Comment, *The Wisconsin Partial Veto: Where Are We and How Did We Get Here? Definition of "Part" and the Test of Severability,* 76 MARQ. L. REV. 625, 649 (1993) (stating that by choosing the "complete and workable" objective test for the partial veto authority, supreme court has bestowed great power on the governor); Mary E. Burke, Comment, THE WISCONSIN PARTIAL VETO: PAST, PRESENT AND FUTURE, 1989 WIS. L. REV. 1395, 1431 (1989) (noting that judiciary has broadly interpreted partial veto authority of governor).

Further, this case, as the logical extension of *Wisconsin Senate,* does not infringe on the prior case law regarding the governor's partial veto authority.

There is no dispute that an appropriation is at issue in the present case. The parties also agree, and the cases make clear, that Art. V, sec. 10 authorizes the governor to decrease an appropriation by striking any or all of the digits in "$350,000." *See Wisconsin Senate,* 144 Wis. 2d at 457, 424 N.W.2d at 396. The parties disagree, however, as to whether the governor may, in effect, authorize a smaller appropriation not only by striking numbers but also by writing in a smaller number for the appropriation.

Petitioners' argue that Art. V., sec. 10 of the Wisconsin Constitution, while allowing the governor to approve an appropriation bill in whole or in part, only authorizes action as to those numbers that are physically part of an appropriation. Looking to the *Henry* definition of "part," they assert that part can only refer to material that is "included in" an appropriation. Their brief provides the following example: "If the governor strikes a $100 appropriation and writes in $80, the amount the governor attempts to veto is $20. However, '$20' does not appear anywhere in the bill. '$20' is not physically part of the bill. It is part of the bill only conceptually." Petitioner's brief at 5. Respondents counter that striking numerals in an appropriation and writing in other numerals to create a smaller dollar figure is no different than striking out individual digits to create a smaller dollar figure. As argued by Respondents, the $100,000 which Governor Thompson excised is clearly a part of $350,000 and, therefore, the governor properly exercised his partial veto power. Respondents also maintain that because the governor's power to disassemble is coextensive with the legisla-

503

ture's power to assemble, the governor necessarily has the authority to write in a smaller number that is part of the larger number originally appropriated by the legislature.

We conclude that the governor, acting within the scope of his powers derived from Art. V., sec. 10 of the Wisconsin Constitution, may strike a numerical sum set forth in an appropriation and insert a different, smaller number as the appropriated sum. We reach this conclusion based on a common sense reading of the word "part" as well as the teachings of prior case law, most notably *Henry* and *Wisconsin Senate.*

As an initial matter, it is important to recognize that the partial veto exercised by the governor in this case only encompasses reduction of monetary sums appropriated in an appropriation bill. The partial veto at issue does not involve an assertion by the governor that he can partially reduce word concepts in an appropriation bill. Thus, there is no allegation that the governor may, for instance, partially veto the word "year" and write in "ten days." The governor concedes in his brief that he does not have such authority. However, because this concern is raised in the Petitioner's brief and in the dissent, we feel compelled also to explain why it is not a valid concern for the future.

As noted above, Art. V, sec. 10(1)(b) of the Wisconsin Constitution provides, in relevant part: "Appropriation bills may be approved in whole or in part by the governor, and the part approved shall become law." In considering whether this provision allows the governor to act as he did in the present case, this court must be satisfied that the partial veto has the effect of leaving intact a law that is complete,

504

entire, and workable. Here, the governor's partial veto had the effect of reducing the $350,000 appropriation by $100,000. This reduction, although substantial, and certainly of great concern to the interests of CUB, did not alter the bill in such a way that it is no longer complete, entire, and workable. On the contrary, other than the monetary reduction, the bill is exactly as the legislature approved it.

There also can be no dispute that sec. 15 of 1993 Senate Bill 44, as partially vetoed by the governor, survives the "topicality" or "germaneness" requirement as set forth in *Wisconsin Senate.* The new provision approved by the governor—"$250,000"—relates to the same subject matter as the original legislative enactment, viz., a money appropriation to be utilized by CUB as a public interest advocacy entity.

The more difficult consideration as to the appropriateness of the governor's partial veto is a determination as to whether $250,000 is "part" of $350,000 so as to fall within the purview of powers authorized by Art. V., sec. 10(1)(b). As noted above, this court has recognized that the word "part" as used in sec. 10(1)(b) should be given its ordinary and accepted meaning. *See Henry,* 218 Wis. at 313, 260 N.W. at 491. As relevant here, the court quoted the following dictionary definition of the word: "something less than a whole; a number, quantity, mass, or the like, regarded as going to make up, with others or another, a larger number, quantity, mass, etc." *Id.* (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY 1781 (2 ed.)). Applying this definition to the situation at hand, it is readily apparent that $250,000 is "part" of $350,000, because $250,000 is "something less than" $350,000, and

$250,000 goes "to make up, with others . . . a larger number," i.e., $350,000. This "common sense" reading of the word part, in terms of appropriation amounts, is what we believe is intended in sec. 10(1)(b).[13]

We are cognizant of the allure of Petitioners' form argument. A conclusion that the governor can partially veto only that which is specifically written or "physically present" as an appropriation amount has superficial appeal. However, as noted by this court in *Kleczka* the test as to whether a part of an appropriation bill is severable from the rest of the bill "must be determined, not as a matter of form, but as a matter of substance." *Kleczka,* 82 Wis. 2d at 704, 264 N.W.2d at 550. Guided by *Wisconsin Senate,* Petitioners recognize that the governor has the authority to reduce appropriations. Further, they concede that the governor could, by striking digits, reduce the $350,000 to a variety of lesser amounts including $50,000, $35,000, $30,000, $5,000, $3,500, $3,000, $500, $350, $300, $50, $35, $30, $5, $3, or even $0. If the governor has it within his authority to reduce the $350,000 appropriation as recognized above, it seems absurd that he could not also reduce the sum to $250,000, which, as noted above, is

---

[13] We point out that this conclusion, of course, is the same regardless of whether the legislature chooses to write out the amount of the appropriation in word form. This is so because the underlying conceptual framework is the same—a "part" of a larger appropriation sum is any sum, whether written out in words or specified with numerals, that is smaller than the original larger appropriation sum. Contrary to the statement of the dissent on this issue, it is not "the underlying conceptual framework [that] . . . matters," *see* dissenting op. at 517, rather, what matters is the distinction between an appropriation sum and a non-appropriation sum.

clearly a "part" of $350,000.[14] Simply put, to accept the conclusion that the governor has the authority to strike digits from an appropriation bill, but not the authority to write in smaller digits, elevates form over substance in contravention of common sense and prior case law.[15]

[14] The choices present under Petitioner's scenario, adopted whole-heartedly by the dissent, point out the complete arbitrariness of their reasoning. Under Petitioner's scenario, the governor cannot write in $250,000. Thus, if the governor believes that the original allotment of $350,000 simply cannot in any way be expended, but believes that the CUB activities are necessary and worthwhile, he must allot $50,000 because that is the highest number he can attain by striking a digit. It is likely that CUB would have serious difficulties operating under such a reduction in money. Nonetheless, because the governor would have no authority to reduce the number other than by striking a digit, his hands would be tied, and $50,000 would be the highest amount that could be appropriated. This arbitrariness becomes even more pronounced when the appropriation sum includes a number of zeros. For instance, assume that $10,000,000 has been appropriated for the renovation of the Capitol. The governor decides that the project is an excellent idea but determines that it can be accomplished with an appropriation of $9,500,000. Using the Petitioner's rationale, the governor could not make such a reduction. His only reducing option would be to strike a zero from the appropriation, resulting in a $1,000,000 appropriation, a sum which would likely destroy the project before it even began.

[15] Interestingly, the petitioners in the *Wisconsin Senate* case recognized the absurdity of allowing a governor to reduce an appropriation to a figure composed of the digits found in the original appropriation: "It is difficult to imagine what public purpose or policy might be served by permitting a governor to reduce appropriations but restricting the reductions to the limited subset of figures derivable from the digits in a particular appropriation." Petitioner's brief in *Wisconsin Senate* at 43.

507

Petitioners form argument would also result in the governor's power to disassemble legislation not being coextensive with the legislature's power to assemble it, contrary to both *Henry* and *Kleczka.* As noted in *Wisconsin Senate,* that which is struck by the governor does not have to be separable as an item; instead, "what the legislature has assembled, the governor can disassemble "part" by "part." *Wisconsin Senate,* 144 Wis. 2d at 441, 424 N.W.2d at 389. Because the governor's power to disassemble legislation through approval in part is as broad as the legislature's power to originally assemble the legislation, and because the legislature itself had the authority to appropriate $250,000 rather than $350,000 for the CUB appropriation, the governor's partial veto in this case must be upheld.

The Petitioners contend that "if numbers can be written in so can words . . .. The governor might veto the words, 'State of Wisconsin' and write in 'City of Milwaukee,' because Milwaukee is part of Wisconsin." Petitioners' brief at 5–6. This contention can be addressed on several levels. First, both sides recognize that the governor never has written in a word and does not claim the authority to do so. Second, this court has already implicitly limited the governor's power in this area in *Wisconsin Senate* to reductions of amounts of appropriations. *Wisconsin Senate,* 144 Wis. 2d at 457, 461, 424 N.W.2d at 396, 397 ("consistent with the broad constitutional power we have recognized the governor possesses with respect to vetoing single letters, words and parts of words[16] in an appropriation bill, that the

---

[16] As noted above, Art. V, sec. 10(1)(c) now prohibits a governor from vetoing letters, but a governor's power to veto whole words remains intact.

governor has similar broad powers to reduce or eliminate numbers and amounts of appropriations"; holding that "a partial veto resulting in a reduction in an appropriation is precisely the sort of partial veto measure the governor of this state is authorized to take pursuant to art. V, sec. 10"). We now make explicit the fact that a governor may only reduce an appropriation by a number contained within the original appropriation allotment. Third, while our prior cases have consistently recognized that a component of the governor's power to partially veto includes the power to reduce the monetary amount of an appropriation, *see Wisconsin Senate* 144 Wis. 2d at 461, 424 N.W.2d at 397, this court has never discussed the conceptual "reduction" of any other elements of an appropriation bill (i.e., dates, times, counties, cities, groups, etc.). This recognition points up the fact that the an important rationale of the partial veto is clearly linked to expenditure reduction and fiscal balance.

The dissent takes us to task for "contravening the language of Art. V, sec. 10(1)(b), Wis. Const., and over 60 years of case law interpreting that provision." Dissenting op. at 512–13. The protests of the dissent notwithstanding, our decision today in no way infringes on the language of sec. 10(1)(b) or overrules any prior opinions interpreting that provision. Rather, the decision is the logical conclusion based specifically on the constitutional provision and the case law interpreting it. After all, it was this court, in *Wisconsin Senate,* that stated: "We hold that a partial veto resulting in a reduction in an appropriation is precisely the sort of partial veto measure the governor of this state is authorized to take pursuant to art. V, sec. 10." *Wisconsin Senate,* 144 Wis. 2d at 461, 424 N.W.2d at 397.

In sum, we hold that the governor's exercise of his partial veto authority in this case is exactly the kind of partial veto authority intended by Art. V, sec. 10 of the Wisconsin Constitution.[17] The striking of the "3" in $350,000 and replacing it with a "2" to reduce the appropriation to $250,000 should be considered an authorized exercise of the governor's power to "approve in part" an appropriation. Accepting the common sense rationale of this opinion in no way expands the governor's power; rather, the approach espoused today simply makes the prescribed power of sec. 10(1)(b) more logical. Succinctly stated, the governor has the power to approve part of an appropriation bill by reducing the amount of money appropriated so long as the number is part of the original appropriation. This power stems from the right to reduce appropriations recognized in *Wisconsin Senate* and extends only to monetary figures and is not applicable in the context of any other aspect of an appropriation.[18]

---

[17] Should the legislature take umbrage at the interpretation of Art. V, sec. 10 of the Wisconsin Constitution set forth today, it is certainly free to set forth the process of amending the constitution in the manner that it deems appropriate. As noted by this court in *Wisconsin Senate,* "[a]ny claimed excesses on the part of the governor in the exercise of this broad partial veto authority are correctable not by this court, but by the people, either at the ballot box or by constitutional amendment." *Wisconsin Senate,* 144 Wis. 2d at 465, 424 N.W.2d at 399.

[18] The dissent points out that in a future veto case a majority of this court may find today's opinion "unpersuasive" and thus allow a governor broader powers to "create new entities, dates, durations, percentages, distances and more." Dissenting op. at 524. There can be no dispute that this court can change course in the future. However, for the powers of the governor to be extended in the fashion suggested by the dissent, this court would have to overrule the present decision's limitation to

*By the Court.*—It is declared and adjudged:

(1) The part of sec. 153 of the 1993 Executive Budget Bill passed by the legislature but partially vetoed by the Governor by writing in a smaller number properly was vetoed pursuant to Art. V, sec. 10(1)(b) of the Wisconsin Constitution.

(2) By virtue of the passage by the legislature and the Governor's partial veto of sec. 153 in accordance with the Wisconsin Constitution, we conclude that sec. 153 as partially vetoed has the force and effect of law.

(3) We further conclude that no questions concerning the validity of other provisions of the 1993 Executive Budget Bill which were vetoed by the Governor are now determined.

Relief denied.

SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. Justice Connor T. Hansen, dissenting in the *Kleczka* case, objected to a governor writing laws with the eraser end of the pencil.[1] Today the majority allows a governor to write laws with the pointed end of the pencil. I dissent.

The majority holds that a governor has a "write-in" veto power that "extends only to monetary figures and is not applicable . . . [to] any other aspect of an appropriation." Majority op. at 511. This holding differentiates between a governor's veto power over appropriation figures and over non-appropriation parts of an appropriation bill, thus contravening the

reduce only monetary appropriations. Thus, the concern of the dissent that today's decision will somehow "wreak havoc" on the scope of a governor's partial veto is completely unfounded.

[1] *State ex rel. Kleczka v. Conta,* 82 Wis. 2d 679, 720, 264 N.W.2d 539 (1978) (Connor T. Hansen, J. dissenting).

language of art. V, sec. 10(1)(b), Wis. Const.,[2] and 60 years of case law interpreting that provision.

I do not join the majority opinion because it fails to justify its abandonment of the long-standing interpretation of art. V, sec. 10(1)(b) that, for purposes of the governor's veto power, appropriation amounts are treated the same as words and other numbers in an appropriation bill.

## I.

The fundamental rule that the governor's veto power extends equally to words, numbers and amounts of appropriations stems directly from the language of art. V. sec. 10(1)(b). The constitution empowers a governor to approve an appropriation bill in whole or in part. The constitution speaks of appropriation bills, not appropriations.

Furthermore, cases dating back 60 years state and restate the principle that a governor's veto power applies to parts of an appropriation bill not dealing with appropriations.[3] In *State ex rel. Wisconsin Tel. Co. v. Henry,* the court for the first time acknowledged that a governor's partial veto power extends equally to words, dollar figures and other numbers contained in an appropriation bill. *Henry,* 218 Wis. 302, 260 N.W. 486, 489 (1935). *See* majority op. at 494–95. Since

---

[2] Article V, sec. 10(1)(b) of the Wisconsin Constitution provides:

> If the governor approves and signs the bill, the bill shall become law. Appropriation bills may be approved in whole or in part by the governor and the part approved shall become law.

[3] *State ex rel. Sundby v. Adamany,* 71 Wis. 2d 118, 131, 237 N.W.2d 539 (1978).

*Henry,* the court often has reaffirmed this axiom.[4] The majority opinion implicitly overrules the line of cases adhering to this basic principle that has been followed without deviation for the last 60 years.

This long-standing line of cases interpreting the governor's constitutional veto power should not be abandoned without strong justification to insure that the court is not acting in an arbitrary or capricious manner. Fidelity to precedent, the doctrine of *stare decisis,* is fundamental to "a society governed by the rule of law."[5] When constitutional interpretation is open to revision in every case, "deciding cases becomes a mere exercise of judicial will, with arbitrary, and unpredictable results."[6]

---

[4] *See State ex rel. Martin v. Zimmerman,* 233 Wis. 442, 289 N.W. 662 (1940) (relying on *Henry* to uphold a partial veto that changed not just monetary figures but altered the legislative policy); *State ex rel. Sundby v. Adamany,* 71 Wis. 2d 118, 129, 237 N.W.2d 910 (1976) (summarizing the lessons from prior cases to be that "the chief executive of this state [is] empowered by the constitutional provision to veto all parts of an appropriation bill regardless of their nature . . ..); *State ex. rel. Kleczka v. Conta,* 82 Wis. 2d 679, 264 N.W.2d (1978) (upholding the governor's power to strike from an appropriation bill not only appropriation figures but words and phrases as well); *State ex rel. the Wisconsin Senate v. Thompson,* 144 Wis. 2d 429, 437, 424 N.W.2d 385 (1988) (concluding that "the governor may, in the exercise of his partial veto authority over appropriation bills, veto individual words . . . and digits, and also may reduce appropriations by striking digits . . ..").

[5] *Akron v. Akron Center for Reproductive Health, Inc.,* 462 U.S. 416, 420 (1983).

[6] *Appeal of Concerned Corporators of Portsmouth Savings Bank,* 129 N.H. 183, 227, 525 A.2d 671 (1987) (Souter, J. dissenting, quoting *Thornburg v. College of Obstetricians and*

## II.

The effect of the majority's effort to distinguish between appropriation figures and other parts of an appropriation bill is easily illustrated.[7] The majority allows a governor to delete a monetary appropriation figure and write in a lesser figure as follows:

authorize expenditures not exceeding $~~$2,000~~ *1,525*

The majority also permits a governor to write in a word for a monetary appropriation when the legislature has expressed the appropriation in words:

~~ten~~ *five* dollars of each fee to be credited to an appropriation

But, the majority will not allow a governor to write in a new number for the following monetary figure:

eligible participants shall earn no more than $~~20,000~~ *14,300*

Nor will the majority permit a governor to exercise this write-in veto:

all moneys received for ~~animal~~ *bovine* health testing

The majority gives four reasons to support its unprecedented distinction between the power of a gov-

---

*Gynecologists,* 476 U.S. 747, 786–87 (1986) (White, J. dissenting)).

[7] These examples are based on actual language in 1993 Senate Bill 44, the appropriation bill in which the governor executed the write-in veto at issue. *See* secs. 88zg, 130h, 159, and 254.

ernor to veto appropriation figures and to veto all other parts of an appropriation bill.

## A.

The majority states that the single issue presented for review is a limited one, requiring only the resolution of a governor's power to strike a numerical sum appropriated and to write in a smaller number. Majority op. at 489, 505. Yet, the majority decides an issue it asserts is not "a valid concern" for this court. Majority op. at 505. It holds that the write-in power "extends *only* to *monetary figures* and is not applicable in the context of any other aspect of an appropriation."[8] Majority op. at 511 (emphasis added). The majority stresses that "a governor may *only* reduce an appropriation by a number contained within the original appropriation allotment." Majority op. at 510 (emphasis added). The majority explicitly determines that a governor cannot use a write-in veto to reduce any part of an appropriation bill that is not an appropriation figure. *See also* majority op. at 511–12, n.18, reiterating its holding that a governor's write-in power does not apply to nonappropriation parts of an appropriation bill.

The majority goes further and concludes that a governor can strike an appropriation sum set forth in words. The majority explains that if the legislature "chooses to write out the amount of the appropriation in word form" a governor can reduce the sum with a

---

[8] Because the most common definition of "figure" is "a number symbol; numeral, digit . . .." *Webster's Ninth New Collegiate Dictionary* (1990), one would assume that the majority would not permit a governor to change an appropriation amount written in words rather than numbers. This assumption is incorrect. *See* majority op. at 507, n.13.

515

write-in veto because "the underlying conceptual framework is the same—a 'part' of a larger appropriation sum is any sum, whether written out in words or specified with numerals." Majority op. at 507, n.13.[9]

The majority opinion is thus a series of contradictions, summarized as follows: (1) The majority says the only issue before the court is whether a governor *may* write in a lesser appropriation figure. (2) Nevertheless the majority decides that a governor *may not* write in a lesser number of a nonappropriation figure, or a lesser concept encompassed in words. (3) Then the majority decides that if an appropriation sum is expressed in words, a governor *may* write in words representing a lesser appropriation sum because the underlying conceptual framework is what matters.

## B.

The majority relies almost exclusively on the *Wisconsin Senate* case to support its distinction between appropriation figures and nonappropriation parts of an appropriation bill. The majority claims that *Wisconsin Senate* "for the first time . . . set forth a dichotomy between a governor's partial veto power over appropriation figures and over nonappropriation parts of an appropriation bill . . .." Majority op. at 500. *Wisconsin Senate,* it claims, upholds a governor's power to "*reduce* an appropriation, whereas he may only *strike* out letters, digits or words" of nonappropriation parts. Majority op. at 500 (emphasis added).

The majority's claim perches precariously on the following language in *Wisconsin Senate:* "We conclude,

---

[9] The legislature's use of words, rather than numbers, to state an appropriation sum is not unusual. *See* the illustration from the 1993 Senate Bill 44 set forth above at p. 515.

consistent with the broad constitutional power we have recognized the governor possesses with respect to vetoing single letters, words and parts of words in an appropriation bill, that the governor has similar broad powers *to reduce or eliminate numbers and amounts of appropriations . . . .*" Majority op. at 499 (quoting *Wisconsin Senate,* 144 Wis. 2d at 457) (emphasis added).

Reliance on this language is mistaken for at least five reasons.

1. Even a cursory reading of this language in *Wisconsin Senate* demonstrates that the court parcels a governor's partial veto power into three categories: (1) to veto words by striking single letters, words or parts of words, (2) to reduce or eliminate numbers, and (3) to reduce or eliminate amounts of appropriations. The majority misconstrues the second category by refusing to acknowledge that a governor can reduce numbers that are not appropriation figures. Instead, the majority merges the first and second categories (all words and nonappropriation numbers) as parts that a governor may "strike" while suggesting that a governor has the power to "reduce" with a write-in veto only appropriation figures. Majority op. at 511. *Wisconsin Senate,* however, expressly allows a governor to "reduce or eliminate numbers," as well as to "reduce or eliminate amounts of appropriation" in an appropriation bill. The *Wisconsin Senate* court in fact upheld the governor's striking of digits to reduce the amount an air pollution producer must pay from "$2,000" to "$200."[10]

---

[10] *See* Petitioner's Appendix to Brief in *Wisconsin Senate* at 129, 139.

*Wisconsin Senate* also upheld the governor's veto of part of a provision creating a council of "9 members, of whom 5 shall be

2. If *Wisconsin Senate* makes for the first time the distinction the majority claims, that case departs from precedent. Assuming the majority is correct in reading *Wisconsin Senate* as announcing a new rule, *Wisconsin Senate* offers no rationale for abandoning precedent and creating a dichotomy between the governor's power to veto appropriation figures and the power to veto all other parts of an appropriation bill. *Wisconsin Senate* provides no explanation for its supposed conclusion that only appropriation figures may be "reduced" while all other parts may be "stricken." The 33 page opinion in *Wisconsin Senate*, authored by Chief Justice Nathan S. Heffernan, is silent on this issue.

3. *Wisconsin Senate* unambiguously determined that a governor's veto power is "similar" with respect to all three categories. The *Wisconsin Senate* court made no distinction between a governor's power to veto words, to strike letters, to reduce or eliminate numbers, and to reduce or eliminate appropriation amounts. *Wisconsin Senate* considered words, letters, numbers and appropriation amounts together, stating that "the governor has the authority to veto sections, subsections, paragraphs, sentences, words, parts of words, letters, and digits included in an appropriation bill . . .." *Wisconsin Senate,* 144 Wis. 2d at 462. The court not only refused to differentiate between words and digits, but also refused to distinguish among digits reflecting appropriation figures, digits reflecting other

---

appointed by the governor." The result of this veto was a council of "9 members who shall be appointed by the governor."

The court has also stated that the way to restrict a governor's partial veto authority to items of appropriation is for the legislature to submit appropriation bills containing only appropriations. *Wisconsin Senate,* 144 Wis. 2d at 455.

monetary sums and digits reflecting nonmonetary numerical concepts.

4. In *Wisconsin Senate* the only issue was a governor's power to *strike* parts of an appropriation bill. All of the 37 partial vetoes at issue in *Wisconsin Senate* were effected by striking letters, words, numbers or appropriation sums. The court concluded that "the governor may, in the exercise of his partial veto authority over appropriation bills, veto individual words . . . and digits, and may also reduce appropriations by *striking* digits." *Wisconsin Senate,* 144 Wis. 2d at 437 (emphasis added). *See also Wisconsin Senate,* 144 Wis. 2d at 458. Thus, *Wisconsin Senate's* use of the verb "reduce" to describe a partial veto of numbers and appropriation amounts merely recognizes that a governor can invoke the partial veto power to decrease numbers and appropriation amounts by striking digits.[11] The opinion in *Wisconsin Senate* frequently equates the power to strike with the power to reduce.

5. *Wisconsin Senate* explicitly refused to consider the constitutionality of a write-in veto power. The court expressly stated that "we do not decide the issue of whether the governor may reduce appropriations by writing in a different and smaller number than that

---

[11] In addition to the words "reduce," "strike," and "veto," the court has used a number of verbs to describe what a governor does by exercising the partial veto power: "Acting Governor Schreiber exercised his partial veto by *lining out* the words . . ." *Kleczka,* 82 Wis. 2d at 685; "[a]s *changed* by the Governor's partial veto . . ..", *Id.;* "the question remains whether the words *excised* were appropriately *removed,"* *Id.* at 703; "[t]he governor *disapproved* certain portions [of the bill]", *Sundby* 71 Wis. 2d at 122; "in the exercise of the item veto the governor can *negative* what the legislature has done . . ..", *Id.* at 134.

passed by the legislature . . .." *Wisconsin Senate,* 144 Wis. 2d at 460, n.17.

The majority errs in its attempt to read *Wisconsin Senate* as an oracle foretelling of a write-in veto power for appropriation figures. *Wisconsin Senate* concluded that it did not "break . . . new ground." *Wisconsin Senate,* 144 Wis. 2d at 437. The court expressly stated that "this case makes no new law." *Wisconsin Senate,* 144 Wis. 2d at 463.

## C.

The majority justifies the write-in veto power for only appropriation figures by concluding that $250,000 is "part" of $350,000. It does so by relying on the definition of the word "part" set forth in *Henry,* 218 Wis. at 313. Majority op. at 506–07. That definition, as the majority opinion recognizes, confers on the word "part" its ordinary and accepted meaning. *Henry* teaches that the word "part" includes "a number, quantity, mass, or the like, regarded as going to make up, with others or another, a larger number, quantity, mass, etc." *Henry,* 218 Wis. at 313. The majority fails to explain how this broad definition justifies a write-in of a lesser appropriation figure but prohibits both a write-in of a lesser number not part of an appropriation figure and a write-in of a lesser concept encompassed in a word (unless that word is an appropriation sum). The majority merely concludes that a " 'common sense' reading of the word part, *in terms of appropriation amounts,* is what is intended in sec. 10(1)(b)." Majority op. at 507 (emphasis added).

There is no " 'common sense' reading of the word part" that supports the majority in limiting a governor's veto power to striking out parts that are made up of certain words and numbers and at the same time

expanding a governor's veto power to writing in parts that are appropriation amounts (both figures and words). On the contrary, heeding the broad definition of the word "part," "common sense" would dictate that "if numbers can be written in so can words . . .. The governor might veto the words, 'State of Wisconsin' and write in 'City of Milwaukee,' because Milwaukee is part of Wisconsin." Petitioners' brief at 5–6.

The most common sense interpretation of the word "part" in art. V, sec. 10, is that it means a physical part of an appropriation bill, so that only the text physically present in a bill can be subject to the governor's partial veto power. The 100,000 by which the Governor reduced the appropriation is a part of the 350,000 appropriation only conceptually; 100,000 and 250,000 are not physically part of the text appropriating the sum of 350,000. This interpretation of "part" fits the definition articulated in *Henry* and repeated throughout the cases construing a governor's partial veto power. It also comports with the rule that there is no substantive difference between appropriation figures and all other parts of an appropriation bill. Finally, reading the word "part" to include only parts physically included in a bill adheres to the "four corners of the bill rule," instructing that a governor may veto only material physically within the four corners of a bill. *State ex rel. Finnegan v. Dammann,* 220 Wis. 143, 147–148, 264 N.W. 622 (1936); *Wisconsin Senate,* 144 Wis. 2d at 456.

## D.

The fourth "reason" the majority gives for its distinction between appropriation figures and all other parts of appropriation bills is that both parties to this action "recognize that the governor never has written in a word and does not claim the authority to do so."

Majority op. at 509. This assertion provides no support for the majority's distinction; it is nothing more than a statement of fact. Prior to 1990 no governor had ever reduced appropriation figures by writing in new digits, yet the majority opinion now validates that practice. Even the governor's "concession" that he does not have the power to write in words does not justify the majority's distinction. A governor's assertion about a correct interpretation of the state constitution is not binding on future governors or on this court.

### III.

It is difficult to predict the consequences of the majority's unpersuasive explanations for treating appropriation figures as different from all other parts of an appropriation bill. This decision will either severely limit a governor's partial veto power or broadly expand it.

If in a future veto case the court finds the majority opinion persuasive in its effort to distinguish between appropriation figures and all other parts of an appropriation bill, the court will necessarily conclude that this decision overruled *sub silentio* our cases determining that no distinction exists between the various parts of an appropriation bill. The court will then be able to write on a clean slate, perhaps allowing a governor to exercise broad partial veto methods over appropriation figures, but limiting partial veto methods over other parts of an appropriation bill.

Under another scenario, a future governor will strike out a word and write in a conceptual part of that word, arguing that the majority's effort to distinguish between appropriation figures and other parts of an appropriation bill was unpersuasive. When the majority's hollow distinction between appropriation figures

and other parts of an appropriation bill falls, the majority opinion may be used to uphold a governor's writing in words, thus once again extending the partial veto power far beyond its previous scope. A governor could use this write-in veto to create new entities, dates, durations, percentages, distances and more. For example, were the legislature to create a "state" advisory board, a governor could fabricate a "Rusk county" advisory board; a legislative grant to "counties" could become a grant to "cities" or a grant to "people over the age of 45 living in specified counties"; an education project established for "2 years" could be shortened to its component parts such as "8 months" or "30 days"; and a legislatively established marketing program for "vegetables" could be construed as a program for "cabbage."

The only way to avoid wreaking havoc on the scope of a governor's partial veto power, to keep from abandoning long-standing interpretation of art. V, sec. 10(1)(b), and to avert the inconsistencies inherent in the majority opinion is to declare the governor's write-in veto unconstitutional. Accordingly, I conclude that Governor Thompson's write-in veto exceeded the constitutional powers granted to a governor by art. V, sec. 10, because the "part objected to" was not physically part of the text of an appropriation bill. I base this interpretation of the constitution on the text of the constitution and our prior cases which impart four teachings relevant to resolving the issue presented in the instant case.

First, the court has set forth a "four corners of the bill" rule to define the material a governor may partially veto, *Wisconsin Senate,* 144 Wis. 2d at 456,[12] and

[12] In upholding the governor's veto of "repealed and recreated," *Wisconsin Senate* explained that "the legislature chose to

to determine whether a bill is an appropriations bill, *Finnegan,* 220 Wis. at 147–148.[13]

Second, the court has declared that the constitutionality of a partial veto does not depend on the substantive content of the part vetoed. A partial veto can be used to change not only an appropriation but any part of an appropriation bill. *Kleczka,* 82 Wis. 2d at 708; *Sundby,* 71 Wis. 2d at 130.

Third, the court has on numerous occasions stated that "what the legislature has assembled, the governor can disassemble 'part' by 'part.' " *Wisconsin Senate,* 144 Wis. 2d at 441. *See also Kleczka,* 82 Wis. 2d at 706; *Sundby,* 71 Wis. 2d at 131–32; *Henry,* 218 Wis. at 315. A coextensive partial veto power means that a governor disassembling a bill is limited to the same building blocks the legislature used to assemble the bill, not that the governor may add new blocks.[14] The gover-

---

repeal and recreate [a statute] within the four corners of the omnibus budget bill. That legislative enactment—even though it was not itself an appropriation—therefore, became subject to the governor's partial veto authority." *Wisconsin Senate,* 144 Wis. 2d at 456. Thus, because the words were within the four corners of the appropriation bill, the governor could veto them.

[13] The court concluded that the legislation was not an appropriation bill because there was no appropriation within the four corners of the bill. The partial veto power, the court reasoned, is broad but should not be interpreted to extend beyond the text of the bill at issue.

[14] The *Henry* decision first gave voice to the concept of a coextensive veto power by linking the concept of a partial veto with the "legislature's power to join and enact separable pieces of legislation in an appropriation bill." *Henry,* 218 Wis. at 315. The *Henry* language, properly understood, means that a governor's power is coextensive with the legislature's in the sense that a governor has "the right to pass independently on every separable piece of legislation in an appropriation bill," and to

nor's coextensive power with the legislature is merely the power to excise physical parts of the bill, not add new language.

Fourth, the court has given great weight to the established practices of the executive and legislative branches in evaluating the scope of the partial veto power. *Wisconsin Senate,* 144 Wis. 2d at 452–53; *Kleczka,* 82 Wis. 2d at 703. Apparently, prior to 1990, no governor attempted to write anything into an appropriation bill. The method for a governor's "disassembling an appropriation bill" has been by deleting phrases, words, parts of words, letters, digits or punctuation from a bill. No governor has previously written in phrases, words, parts of words, letters, digits or punctuation.[15]

I conclude that the constitution forbids expanding the partial veto methods to include a write-in power. For the reasons set forth, I dissent.

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN and Justice WILLIAM A. BABLITCH join this dissent.

---

either approve or veto each part that the legislature has physically included. *Henry,* 218 Wis. at 315.

[15] Legislative Reference Bureau, The Partial Veto in Wisconsin—An Update, Information Bulletin, 87–IB–3 (Rev. Aug. 1988).