[No. 1445.]

# THE STATE OF NEVADA, ex rel. GEORGE D. PYNE, Relator, v. CHARLES A. LaGRAVE, State Controller, Respondent.

APPROPRIATION BY LEGISLATURE, WHAT NECESSARY TO CONSTITUTE—STATE MONEY.—To constitute an appropriation of state moneys by legislative act, there must be money placed in the fund applicable to the designated purpose. An appropriation, in the sense of the constitution, means the setting apart a portion of the public funds for a specific public purpose. No particular form of words is necessary, if the intention to appropriate is plainly manifest.

ORIGINAL PROCEEDING. Application by the State, on the relation of George D. Pyne, against C. A. LaGrave, State Controller, requiring him to draw his warrant in favor of relator, as secretary of Company B, First Regiment, Nevada National Guard, for rent of an armory for the company. Writ denied.

The facts appear in the opinion.

*J. Poujade*, for Relator:

I. Section 11, Statutes of 1895, p. 109, is, if anything, an appropriation. It shows the intention of the legislature, that money shall be paid, for a certain purpose, within a certain amount, when, how, by whom and, as far as requisite, the fund from which it shall be paid. (*McCauley* v. *Brooks*. 16 Cal. 28; *City* v. *Dunn*, 69 Cal. 73; *Yolo County* v. *Dunn*, 77 Cal. 133; *Proll* v. *Dunn*, 80 Cal. 220; *Humbert* v. *Dunn*, 84 Cal. 57; *Irelan* v. *Colgan*, 96 Cal. 415; *Gilbert* v. *Moody*, 25 Pac. 1093; *Reynolds* v. *Taylor*, 43 Ala. 420; *Carr* v. *State*, 127 Ind. 204.)

II. An appropriation to pay limited amounts periodically may be constitutional and legal without specifically setting apart moneys. (*Nicholas* v. *Controller*, 4 Stew. & Porter (Ala.) 157; *Gilbert* v. *Moody*, 25 Pac. 1093.

*Robert M. Beatty*, Attorney-General, for Respondent.

By the Court, BELKNAP, J.:

A former application for *mandamus* was dismissed upon the ground of insufficiency of the petition (22 Nev. 417).

The application has been renewed upon a corrected statement.

The question now is whether an appropriation of the public funds has been made. It is claimed that it is made by section 11 of the act of 1895, as follows:

"Section 11. It shall be the duty of the board of county commissioners of any county in which public arms, accouterments or military stores are now had, or shall hereafter be received, for the use of any volunteer organized militia company, to provide a suitable and safe armory for organized militia companies within said county. All claims for the expense of procuring and maintaining armories shall be audited and approved by the board of military auditors, and upon approval of such claims they shall be presented to the state controller, who shall draw his warrant upon the state treasury for the amount so approved, and upon presentation of said warrant the state treasurer shall pay the same out of the general fund. Such expenses shall not exceed seventy-five dollars ($75) per month for any company, except that each company regularly drilling with field pieces or machine guns, and using horses therewith, may be allowed an additional sum not to exceed twelve and 50-100 dollars ($12 50) per month for each piece or gun." (Stat. 1895, 109.)

It is said that fixing the maximum amount to be paid each company and directing the controller to draw his warrant for the amount and the treasurer to pay it constitutes an appropriation.

These matters alone do not accomplish that end. To constitute an appropriation there must be money placed in the fund applicable to the designated purpose. The word appropriate means to allot, assign, set apart or apply to a particular use or purpose. An appropriation in the sense of the constitution means the setting apart a portion of the public funds for a public purpose. No particular form of words is necessary for the purpose, if the intention to appropriate is plainly manifested.

In *Ristine* v. *State*, 20 Ind. 339, the court said: "An appropriation of money to a specific object would be an authority to the proper officer to pay the money, because the auditor is authorized to draw his warrant upon an appropriation and the treasurer is authorized to pay such amount if he has appropriated money in the treasury. And such an

appropriation may be prospective, that is, it may be made in one year of the revenues to accrue in another or future years, the law being so framed as to address itself to such future revenues."

In *McCauley* v. *Brooks*, 16 Cal. 28, the court said: "To an appropriation within the meaning of the constitution nothing more is requisite than a designation of the amount and the fund out of which it shall be paid."

The authorities to which we are referred do not support the relator's contention. Except the case of *Reynolds* v. *Taylor*, 43 Ala. 420, all are cases in which an appropriation of money had been expressly made in terms. In *Reynolds* v. *Taylor* it was said that if the salary of a public officer is fixed and the time of payment prescribed by law, no special annual appropriation is necessary.

Under existing facts it is improbable that the provisions of the statute were intended as an appropriation, because the number of military companies that could have received its benefits was indefinite and uncertain. These facts are: The law permits one company in each of the fourteen counties of the state, and excepts from this provision companies existing at the time of the passage of the act. (Stats. 1893, 96.) We understand that at present there are eight companies in the state, but that number may be increased up to the maximum at any time.

If an appropriation had been intended the act would conflict with the provisions of the law of 1866 defining the duties of state controller. Among these duties he is forbidden to draw any warrant on the treasury except there be an unexhausted specific appropriation to meet the same. And it is made his duty, among other things, to keep an account of all warrants drawn on the treasury, and a separate account under the head of each specific appropriation in such form and manner as at all times to show the unexpended balance of each appropriation. (Sections 1812–31, Gen. Stats.)

The foregoing requirements cannot be observed if the act of 1895 be construed as making an appropriation because there is no specific appropriation upon which a warrant could

be drawn; and also the accounts cannot show the unexpended balance as required.

" By a specific appropriation we understand an act by which a named sum of money has been set apart in the treasury and devoted to the payment of a particular claim or demand. * * * The fund upon which a warrant must be drawn must be one the amount of which is designated by law, and therefore capable of definitive exhaustion—a fund in which an ascertained sum of money was originally placed, and a portion of that sum being drawn an unexhausted balance remains, which balance cannot thereafter be increased except by further legislative appropriation." (*Stratton* v. *Green*, 45 Cal. 149.)

The law of 1866 was intended to prescribe a uniform rule for the controller. That of 1895 to provide a method by which armory rent may be obtained when an appropriation shall have been made. Thus construed there is no repugnancy between the two acts and both may well subsist together.

" Repeals by implication are not favored," said Judge Field, speaking for the court, in *Crosby* v. *Patch*, 18 Cal. 438. " Such is the universal doctrine of the authorities. 'Whenever two acts,' says the supreme court of Pennsylvania, 'can be made to stand together, it is the duty of a judge to give both of them full effect. Even when they are seemingly repugnant, they must, if possible, have such a construction that one may not be a repeal of the other, unless the latter one contain negative words, or the intention to repeal is made manifest by some intelligible form of expression.' (*Brown* v. *County Commissioners*, 21 Pa. St. 43.) 'The invariable rule of construction, says the supreme court of New York, 'in respect to the repealing of statutes by implication is, that the earliest act remains in force, unless the two are manifestly inconsistent with and repugnant to each other; or unless in the latest act express notice is taken of the former, plainly indicating an intention to abrogate it. As laws are presumed to be passed with deliberation, and with full knowledge of existing ones on the same subject, it is but reasonable to conclude that the legislature, in passing a statute did not intend to interfere with or abrogate any

former law relating to the same matter, unless the repugnancy between the two is irreconcilable." (*Bowen* v. *Lease*, 5 Hill, 226.)

" 'It is à rule,' says Sedgwick, 'that a general statute without negative words will not repeal the particular provisions of a former one, unless the two acts are irreconcilably inconsistent. The reason and philosophy of the rule, says the author, is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all. So where an act of parliament had authorized individuals to inclose and embank portions of the soil under the river Thames, and had declared that such land should be free from all taxes and assessments whatsoever.' The land tax act, subsequently passed, by general words embraced all the land in the kingdom; the question came before the king's bench, whether the land mentioned in the former act had been legally taxed, and it was held that the tax was illegal."

*Mandamus* denied.