Senator Fred RISSER, Senator Brian Burke, Representative David Travis and Sheila R. Mooney, Petitioners,

v.

James R. KLAUSER and Governor Tommy G. Thompson, Respondents.

Supreme Court

*No. 96–0042–OA. Oral argument October 29, 1996.—Decided January 31, 1997.*

(Also reported in 558 N.W.2d 108.)

CROOKS, J., dissents.
STEINMETZ and WILCOX, J.J., join.

For the petitioners there were briefs by *Lynn Adelman, Jon Deitrich* and *Adelman, Adelman & Murray, S.C.,* Milwaukee and oral argument by *Lynn Adelman.*

For the respondents there was a brief by *Bruce L. Harms, Michael J. Modl* and *Axley Brynelson,* Madison and oral argument by *Michael J. Modl.*

¶ 1. SHIRLEY S. ABRAHAMSON, Chief Justice. This is an original action by several Wisconsin state legislators and a taxpayer (petitioners)[1] seeking a declaration that the Governor's write-in veto of a monetary figure in the second sentence of section 57 of 1995 Assembly Bill 557 exceeded his authority under art. V, § 10 of the Wisconsin Constitution.

¶ 2. The "write-in" veto in issue in the present case was first recognized as within a governor's art. V, § 10 powers in *Citizens Utility Board v. Klauser,* 194 Wis. 2d 484, 534 N.W.2d 608 (1995), hereinafter *C.U.B.* The write-in veto is a lesser included subset of the

---

[1] The respondents are James R. Klauser, Secretary of the Department of Administration, and Tommy G. Thompson, Governor of the State of Wisconsin, collectively referred to herein as the Governor.

partial veto made available to a governor by the 1930 amendment to Wis. Const. art. V, § 10.

¶ 3. The petitioners contend that the constitution limits the write-in veto to reductions of appropriation amounts and that the revenue bonding limit in the second sentence of section 57 is not an appropriation amount.

¶ 4. The Governor advances two arguments in support of his exercise of the write-in veto in this case. First, the Governor contends that the write-in veto is not limited to reducing appropriation amounts and that the write-in veto may be exercised on any monetary figure in an appropriation bill. Second, the Governor argues that even if a governor's write-in veto is limited to appropriation amounts, the monetary figure in issue in the present case is an appropriation amount subject to the write-in veto.

¶ 5. We conclude that the Governor's write-in veto may be exercised only on a monetary figure which is an appropriation amount and that the monetary figure in the second sentence of section 57 of 1995 A.B. 557 is not an appropriation amount. Accordingly, we hold that the Governor's write-in veto challenged in the present case is not authorized by the constitution and is therefore invalid.

## I.

¶ 6. This case comes to us on stipulated facts. As background for our legal analysis we shall summarize the facts, the constitutional law relating to the partial veto and the statutory context of the second sentence of section 57 of 1995 A.B. 557.

¶ 7. On November 16, 1995, the Wisconsin legislature enrolled 1995 A.B. 557, an omnibus bill setting forth the transportation budget. In addition to appro-

181

priating funds for transportation purposes, it creates, repeals and amends various transportation-related statutes. The bill, among other things, imposes taxes, authorizes highway construction, provides penalties, makes appropriations and grants bonding authority. This latter function is the subject of section 57 of the bill.

¶ 8. On December 6, 1995, the Governor vetoed numerous parts of 1995 A.B. 557 and approved the remainder. The part approved was enacted as 1995 Wis. Act 113.

¶ 9. This case is ruled by the 1930 amendment to the Wisconsin constitution authorizing a governor to approve appropriation bills "in whole or in part." Wis. Const. art. V, § 10(1)(b). The parties agree, and the court holds, that 1995 A.B. 557 is an appropriation bill within the meaning of art. V, § 10(1)(b). Article V, § 10(1), provides as follows:

> (1)(a) Every bill which shall have passed the legislature shall, before it becomes a law, be presented to the governor.
>
> (b) If the governor approves and signs the bill, the bill shall become law. Appropriation bills may be approved in whole or in part by the governor, and the part approved shall become law.
>
> (c) In approving an appropriation bill in part, the governor may not create a new word by rejecting individual letters in the words of the enrolled bill.

■

¶ 10. Certain principles emerge from the court's interpretations of this language. First, a governor may exercise the partial veto only on parts of bills that contain appropriations within their four corners. *State ex rel. Finnegan v. Dammann*, 220 Wis. 143, 147–48, 264

N.W. 622 (1936). Second, the partial veto must be exercised in such a manner that the part of the bill remaining constitutes a "complete, entire, and workable law." *State ex rel. Wisconsin Telephone Co. v. Henry*, 218 Wis. 302, 314, 260 N.W. 486 (1935); *State ex rel. Martin v. Zimmerman*, 233 Wis. 442, 450, 289 N.W.2d 662 (1940). Third, the disapproval of part of an appropriation bill may not result in a provision which is "totally new, unrelated or non-germane" to the original bill. *Wisconsin Senate v. Thompson*, 144 Wis. 2d 429, 451–53, 424 N.W.2d 385 (1988). Fourth, the partial veto authority extends to any part of an appropriation bill, not only to appropriations. *State ex rel. Sundby v. Adamany*, 71 Wis. 2d 118, 130, 237 N.W.2d 910 (1976). Fifth, a governor may strike words or digits from an appropriation bill. *State ex rel. Kleczka v. Conta*, 82 Wis. 2d 679, 685, 264 N.W.2d 539 (1978); *Wisconsin Senate*, 144 Wis. 2d at 457. However a governor "may not create a new word by rejecting individual letters in the words of the enrolled bill." Wis. Const. art. V, § 10(1)(c), (1990 amendment); *C.U.B.*, 194 Wis. 2d at 501. Sixth, a governor may exercise the partial veto power by writing in a smaller number for a number expressing an appropriation amount. *C.U.B.*, 194 Wis. 2d at 499–500 and n.10 (relying on *Wisconsin Senate*, 144 Wis. 2d at 461).

¶ 11. A governor's authority to alter legislation, granted in Wis. Const. art. V, § 10, is part of the constitution's carefully balanced separation of powers between the executive and the legislative branches. It is the judiciary's role to declare the boundaries which the constitution sets between the other two branches. Our inquiry in this case is whether the Governor's actions comport with the constitutional grant of authority set out in art. V, § 10(1)(b).

¶ 12. The Governor's veto of part of the second sentence of section 57 of 1995 A.B. 557 is at issue in this case. Section 57 provides as follows:

Section 57. 84.59(6) of the statutes is amended to read:

84.59**(6)** Revenue obligations may be contracted by the building commission when it reasonably appears to the building commission that all obligations incurred under this section can be fully paid from moneys received or anticipated and pledged to be received on a timely basis. Revenue obligations issued under this section shall not exceed ~~$950,834,000~~[2] $1,123,638,100[3] [$1,083,638,100][4] in principal amount, excluding obligations issued to refund outstanding revenue obligations. Not more than ~~$841,634,000~~ $1,081,341,000 [$1,041,341,000] of the ~~$950,834,000~~ $1,123,638,100 [$1,083,638,100] may be used for transportation facilities under s. 84.01(28) and major highway projects under ss. 84.06 and 84.09.

¶ 13. Section 57 amended Wis. Stat. § 84.59(6) (1993–1994).[5] The first sentence of section 57 authorizes the building commission to contract for the sale of revenue obligations,[6] the proceeds of which may under

---

[2] The figures lined through are from the previous enactment.

[3] The figures underlined are those approved by the legislature and stricken by the Governor.

[4] The final, bracketed figure of each trio was written in by the Governor.

[5] All further references are to the 1993–1994 statutes unless otherwise indicated.

[6] Revenue obligations are governed generally by Wis. Stat. §§ 18.51 through 18.64.

§ 84.59(1) fund certain transportation facilities and projects.[7] This sentence is not in dispute.

¶ 14. In the second sentence of section 57 the legislature raised the cumulative limit on revenue obligations that may be contracted under § 84.59. The Governor struck this increased limit on revenue bonds and wrote in a figure $40 million lower. It is this veto that the petitioners challenge.

¶ 15. The write-in vetoes in the third sentence, as well as numerous other write-in vetoes, were not challenged or discussed in the briefs by either party. At oral argument, in response to the court's questions, counsel for the Governor urged the court to consider the third sentence as part of the overall revenue/appropriation scheme informing the meaning of the second sentence and its monetary figure. At oral argument the petitioners described the third sentence and the figures therein as setting forth a use limitation, in contrast with appropriation amounts subject to the partial veto. We shall examine the third sentence in our discussion of the challenged write-in veto.

¶ 16. The Governor makes two alternative arguments to support his write-in veto of the monetary figure in the second sentence of section 57. The first argument is that a governor's write-in veto power is not limited to reducing appropriation amounts; rather it is limited to reducing any monetary figures in an appropriation bill. The second argument is that even if a

---

[7] Revenues from the sale of revenue obligations and those derived from motor vehicle registration fees under Wis. Stat. § 341.25, pledged to secure the repayment of the revenue obligations, are deposited in a fund created under Wis. Stat. § 18.57 (1). Various continuing appropriation provisions appropriate the moneys in this fund. Wis. Stat. §§ 20.395(3)(br), 20.395(4) (at) and (jq) and 20.395(6)(as).

governor's write-in veto is limited to appropriation amounts, the monetary figure in the second sentence is an appropriation amount subject to the write-in veto. Under either argument, the Governor contends that his write-in veto in the present case is constitutional. We shall discuss each of these positions in turn.

## II.

¶ 17. The Governor's contention that the write-in veto applies to any monetary figure in an appropriation bill and is not limited to appropriation amounts rests on the Governor's interpretation of *C.U.B.*, 194 Wis. 2d 484. In *C.U.B.* the Governor had exercised his veto by striking the figure $350,000 and writing in $250,000 in an entry within § 20.005(3), the appropriations schedule. The Governor argues that *C.U.B.* should be limited to its facts—a veto of an appropriation amount(and that the court did not intend *C.U.B.* to address the issue of the constitutionality of a write-in veto of a monetary figure that is not an appropriation amount. According to the Governor, the *C.U.B.* court's limitation of the write-in veto to appropriation amounts merely reflected the fact that the veto at issue in that case involved an appropriation amount.

¶ 18. In this part of his argument the Governor does not ask that we rule narrowly on the facts at hand, but rather that we state a generally applicable rule: that the write-in veto applies to all monetary figures in appropriation bills. This rule would preclude a governor's writing in "Eau Claire city" in place of "Eau Claire county," "37 counties" in place of "72 counties" and "Route 69" in place of "Route 151."[8]

---

[8] The Governor's proposed rule would not preclude reducing the following monetary figures if set forth in an appropriation

¶ 19. We disagree with the Governor's interpretation of *C.U.B.* for three reasons. First, in *C.U.B.* the court relied on the oral argument in which the Governor's counsel focused explicitly on the critical necessity to limit the write-in veto power of a governor to appropriation amounts. Second, the court fully discussed, and then relied upon, *Wisconsin Senate* as creating a dichotomy between appropriation amounts and other parts of appropriation bills. Third, the text of the *C.U.B.* decision expressly limits the write-in veto to appropriation amounts.

¶ 20. At oral argument in the *C.U.B.* case, counsel for the Governor was pressed for a standard by which the court might sanction the write-in veto. Counsel for the Governor replied that "the standard is if it appears in an appropriation bill first of all and it is a number of an appropriation, the Governor may reduce it by striking it and writing in a smaller number." The following colloquy demonstrates the rule proposed by counsel for the Governor and some of the justices' concerns:

> Justice Bablitch: You're saying that only an appropriation can be approved in whole or in part?
>
> Counsel for the Governor: Yes. And an appropriation bill also, as the court has said before.
>
> Justice Abrahamson: But you can't write in on the appropriation bill, but you can write in on the appropriation?
>
> Counsel for the Governor: Correct.

---

bill: "~~Ten~~ Twelve [three] dollars for issuing a copy of a birth certificate." *See* 1995 A.B. 150, § 3343d (executive budget bill) (amending Wis. Stat. § 69.22(1)(c)).

Justice Geske: Is there any other basis upon which you can distinguish between reducing numbers and reducing conceptually other concepts?

Counsel for the Governor: If you allow striking outside of an appropriation number you're going to run into problems very quickly with the 1990 amendment. For example, if the legislature passes a bill that says "something shall happen in 15 days" and the governor can cross that out and write in the number "10," we have created a problem because if the legislature had written out in script "fifteen" under the new constitutional amendment he could not cross out the letters to get to "ten."

Justice Geske: So you agree with Mr. Adelman [petitioner's counsel] on the numbers outside of appropriation numbers?

Counsel for the Governor: Yes. But at the core of the partial veto authority are dollars. That is the core; that is what the people were speaking to in 1930, the first amendment, and in 1990 when it was amended again. If the governor can approve parts of appropriation bills, and this court has certainly held that the governor can, and included within that concept is part of appropriations. That is, I thought, the easier concept to grasp.

¶ 21. Addressing the concerns of these justices and adopting the limited rule proposed by counsel for the Governor, *C.U.B.* expressly draws a distinction between appropriation amounts and other parts of appropriation bills, allowing a write-in veto of the former but not the latter. *C.U.B.*, 194 Wis. 2d at 499, 506 n.13, 508–10.

¶ 22. The second indication that *C.U.B.* limited the write-in veto to appropriation amounts is that it rested its holding on precedent, namely *Wisconsin Sen-*

188

*ate. C.U.B.* interpreted *Wisconsin Senate* as having "set forth a dichotomy between a governor's partial veto power over appropriation figures and over non-appropriation parts of an appropriation bill" and having declared that "a governor has the power to reduce an appropriation, whereas he may only strike out letters, digits or words in regard to non-appropriation concepts in the appropriation bill." *C.U.B.*, 194 Wis. 2d at 499.[9]

¶ 23.　Third, the text of the *C.U.B.* opinion limits the write-in veto to appropriation amounts. To quote the *C.U.B* opinion, the issue presented was whether the partial veto power "permits the governor to strike a numerical sum appropriated in the bill and to insert a different, smaller number as the appropriated sum." *Id.* at 488. The court responded unequivocally in the affirmative to this issue: "We now make explicit the fact that a governor may only reduce an appropriation by a number contained within the original appropriation allotment." *C.U.B.*, 194 Wis. 2d at 508–09.

¶ 24.　And further, in response to the specter raised by the dissent of an unlimited write-in veto

---

[9] The *C.U.B.* court summarized its reading of *Wisconsin Senate* as follows:

> [T]his court has already implicitly limited the governor's power in this area in *Wisconsin Senate* to reductions of amounts of appropriations. [citation omitted] "[C]onsistent with the broad constitutional power we have recognized the governor possesses with respect to vetoing single letters, words and parts of words in an appropriation bill, that the governor has similar broad powers to reduce or eliminate numbers and amounts of appropriations".... We now make explicit the fact that a governor may only reduce an appropriation by a number contained within the original appropriation allotment.

*Citizens Utility Board v. Klauser*, 194 Wis. 2d 484, 508–509 (quoting *Wisconsin Senate v. Thompson*, 144 Wis. 2d 429, 457, 424 N.W.2d 385 (1988)).

power, the *C.U.B.* majority explicitly addressed the issue of a write-in veto of other monetary sums and limited the *C.U.B.* decision to a write-in veto of appropriation amounts. *Id.* at 510–11 n.18.

¶ 25. The *C.U.B.* majority emphasized the limited nature of its holding, as follows: "[F]or the powers of the governor to be extended in the fashion suggested by the dissent, this court would have to overrule the present decision's limitation to reduce only monetary appropriations." *C.U.B.*, 194 Wis. 2d at 510–11 n.18. The reference to the need for overruling makes abundantly clear that this limitation was intended as an element of the holding.

¶ 26. In numerous parts of the opinion, the *C.U.B.* court sanctioned the write-in veto but limited its applicability to lowering appropriation amounts and only appropriation amounts.[10] The court summed up as follows:

> Accepting the common sense rationale of this opinion in no way expands the governor's power; rather,

---

[10] *See, e.g., C.U.B.*, 194 Wis. 2d at 506 n.13 (the write-in veto applies "whether the legislature chooses to write out the amount of the appropriation in word form. . . .a 'part' of a larger appropriation sum is any sum, whether written out in words or specified with numerals."); *Id.* at 506 n.13 ("what matters is the distinction between an appropriation sum and a non-appropriation sum"); *Id.* at 509 ("we now make explicit the fact that a governor may only reduce an appropriation by a number contained within the original appropriation allotment"); *Id.* at 510 ("Succinctly stated, the governor has the power to approve part of an appropriation bill by reducing the amount of money appropriated so long as the number is part of the original appropriation"); *Id.* at 510 (the governor's write-in veto power "extends only to monetary figures and is not applicable in the context of any other aspect of an appropriation").

the approach espoused today simply makes the prescribed power of sec. 10(1)(b) more logical. Succinctly stated, the governor has the power to approve part of an appropriation bill by reducing the amount of money *appropriated* so long as the number is part of the original appropriation. This power stems from the right to reduce appropriations recognized in *Wisconsin Senate* and extends only to *monetary figures* and is not applicable in the context of any other *part of an appropriation*.

*Id.* at 510 (emphasis added). Only monetary figures which are appropriation amounts are subject to the write-in veto power under *C.U.B.*

¶ 27. In sum, the Governor's interpretation of *C.U.B.* contravenes the basis upon which *C.U.B.* was argued by the parties and written by the court. The *C.U.B.* decision adjudicated the constitutional scope of the governor's write-in veto power and is precedential.[11] Accordingly, following precedent we conclude that the constitution prohibits a write-in veto of monetary figures which are not appropriation amounts.

---

[11] The Governor implies that the *C.U.B.* court's comments about a governor's power to write in a veto relating to non-appropriation amounts are dicta. The court has stated, however, that "when a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision." *State v. Kruse*, 101 Wis. 2d 387, 392, 305 N.W.2d 85 (1981) (quoting *Chase v. American Cartage Co.*, 176 Wis. 235, 238, 186 N.W. 598 (1922)).

¶ 28. The Governor's second argument is that even if *C.U.B.* limits the write-in veto to appropriation amounts, the vetoed figure in the second sentence of section 57 is an appropriation amount. The Governor advances several overlapping and related rationales for characterizing the monetary figure in the second sentence as an appropriation amount.

¶ 29. First, the Governor asserts that the revenue bonding limit at issue in the case at bar lies within the definitions of appropriation set out in *Finnegan*, 220 Wis. 143. To determine that the bill in question in that case did not contain an appropriation, the *Finnegan* court was called upon to define the word appropriation. The court set forth three similar definitions as follows:

> In Webster's New International Dictionary the following definition is made:
> "Appropriation bill. Govt. A measure before a legislative body authorizing the expenditure of public moneys and stipulating the amount, manner, and purpose of the various items of expenditure."
> In *State v. LaGrave*, 23 Nev. 25, 41 Pac. 1075, 1076, the court said:
> "An appropriation in the sense of the constitution means the setting apart a portion of the public funds for a public purpose."
> In *Hunt v. Callaghan*, 32 Ariz. 235, 257 Pac. 648, 649, the court said:
> "An appropriation is 'the setting aside from the public revenue of a certain sum of money for a specified object, in such manner that the executive officers of the government are authorized to use that money, and no more, for that object, and no other."

192

*Id.* at 148; *Kleczka*, 82 Wis. 2d at 688. Under each definition, an appropriation involves an expenditure or setting aside of public funds for a particular purpose.

¶ 30. We can find nothing in section 57 that authorizes an expenditure or the setting aside of public funds for a particular purpose. Section 57 deals with raising revenue and limiting the use to which the revenue may be put. Sentences one and two provide that revenue obligations may be contracted for under certain conditions and not in excess of a certain amount. The third sentence provides that no more than a stated amount may be used for two specified transportation purposes. Section 57 thus establishes a level of funds that the state is authorized to generate by the sale of bonds and limits the purposes for which the revenue raised may be expended.

¶ 31. Section 57 does not appropriate the funds. The sale of bonds is the commitment of the state to a debtor relation to those who purchase the bonds and is therefore distinguishable from an appropriation.[12] The sale of bonds is revenue raising; revenue raising and appropriation are more nearly antonyms than synonyms. *Finnegan*, 220 Wis. at 148. Whether the three sentences of section 57 are looked at individually or collectively, increasing a bond authorization and limiting the purposes for which a certain amount of the moneys raised might be used do not constitute an expenditure or setting aside of public funds for a particular purpose.

¶ 32. We are unpersuaded by the Governor's position that section 57 is an appropriation because this view contravenes legislative procedures relating to appropriations. In Wisconsin all appropriations are

[12] The contracting of state debt is governed by Wis. Const. art. VIII.

listed in chapter 20 of the statutes. Wis. Stat. § 20.003(2) governs the enactment of appropriations as follows:

> All appropriations made by the legislature shall be listed in this chapter. The revisor of statutes shall assign numbers in this chapter to any appropriation not so numbered and if appropriation laws are enacted which are not so numbered to correspond with the numbering system of this chapter as outlined in sub. (3), the revisor of statutes shall renumber such laws accordingly.

¶ 33. The legislative attorneys at the Legislative Reference Bureau, upon whom the task of drafting legislation falls, Wis. Stat. § 13.92(1)(b)1, follow a drafting manual to implement the statutory directives of § 20.003(2). The Bill Drafting Manual instructs that: "[s]ubchapters II to IX of ch. 20, stats., provide the appropriation 'text.' The text is the enactment of law providing for the appropriations." Legislative Reference Bureau, *Wisconsin Bill Drafting Manual 1997–1998*, § 20.001(2) (revised August 1996). "The text of a statutory appropriation paragraph must state from what fund the money is appropriated and the type, duration and general purpose of the appropriation." *Id.* at § 20.02.

¶ 34. The requirement that appropriations be listed in chapter 20 of the statutes is consistently heeded. With one early exception, namely *Henry*,[13] in each of the prior partial veto cases in which the court

---

[13] In the first partial veto case, *State ex rel. Wisconsin Telephone Company v. Henry*, 218 Wis. 302, 260 N.W.2d 486 (1935), section 8 of 1935 A.B. 48 was titled "Appropriations." The bill did not specify a statutory section in which the appropriations were to be codified.

affirmed a governor's power to veto in part, the appropriation was listed in ch. 20. Section 57, on the other hand, amended a statute found in chapter 84, governing highways.

¶ 35. *Finnegan*, 220 Wis. at 147–48, and legislative practice thus make clear that a change in a revenue generation provision is not an appropriation.

¶ 36. A second and overlapping rationale urged by the Governor is that the monetary figure in the second sentence of section 57 is an appropriation amount because the figure affects and is closely interrelated with appropriations found elsewhere in the bill and in the statutes.

¶ 37. The Governor reasons as follows: Various sections of ch. 20 effectively appropriate all the moneys raised through sales of § 84.59 revenue obligations for use on transportation projects and facilities; the second sentence of section 57 raises the limit on revenue obligations which may be sold under § 84.59; no further legislative action is necessary to expend any funds raised under the authority of the increase in revenue obligations; thus, the second sentence of section 57 is an appropriation.

¶ 38. The Governor reads *Finnegan* as stating that if a bill contains provisions which set in motion a chain of events such that funds are disbursed without further legislative action, the bill contains an appropriation. This is not what *Finnegan* says. Indeed the Governor's argument was explicitly rejected by the court in *Finnegan*.

¶ 39. *Finnegan* construed the constitution as barring exercise of the partial veto on parts of any bill which "does not within its four corners contain an

appropriation." *Finnegan*, 220 Wis. 2d at 147.[14] The bill at issue in *Finnegan* increased a revenue raising provision; it increased the permit fees to be paid by motor carriers. The increase in permit fees changed the amount appropriated because the funds generated by the fees were appropriated by a previously enacted appropriation. When the governor struck the sentences increasing the fees, the partial veto was challenged on the ground that the bill was not an appropriation bill. The Secretary of State argued that the fee increase in concert with other statutes constituted an appropriation.[15]

¶ 40. The *Finnegan* court applied its four corners rule by inquiring whether "the fact that [the bill] indirectly affects continuing revolving fund appropriations theretofore enacted by raising the permit fees of various types of carriers, constitute it an appropriation bill." *Finnegan*, 220 Wis. 2d at 147–48. The *Finnegan* court concluded: "We are convinced that this question must be answered in the negative." *Id.* at 148. In sum, the fact that a provision generates revenue and affects an appropriation because the amount appropriated is determined by the amount of revenue generated does not convert the bill into an appropriation bill nor the provision into an appropriation.

¶ 41. *Finnegan's* result was based on the court's construction of the 1930 amendment, the same consti-

---

[14] *Finnegan* has been cited with approval in numerous cases, including most recently in *C.U.B.*, 194 Wis. 2d at 494. *See also Wisconsin Senate*, 144 Wis 2d at 441–42; *State ex rel. Kleczka v. Conta*, 82 Wis. 2d 679, 689, 264 N.W.2d 539 (1978); *State ex rel. Sundby v. Adamany*, 71 Wis. 2d 118, 131, 237 N.W.2d 910 (1976).

[15] Brief for Defendant at 7–10, *Cases and Briefs*, Vol. 1990, Wisconsin State Law Library.

tutional text at issue here. The *Finnegan* court's analysis of the intent underlying the newly enacted amendment led it to conclude that extending the partial veto power to provisions which raise revenue would extend the scope of that power "far beyond the evils it was designed to correct." *Id.* at 148. The evil principally in view at the time was the practice of legislative logrolling.[16]

¶ 42. In *Wisconsin Senate*, 144 Wis. 2d at 454–55, 457, 461, and *C.U.B.*, 194 Wis. 2d at 509, the court emphasized a different rationale for the partial veto: the governor's significant constitutional role in the budget process. With this emphasis, those decisions read the governor's authority as at its broadest when vetoing appropriation amounts.

¶ 43. The budgetary control rationale is consistent with limiting the write-in power of the governor to the reduction of appropriation amounts. At the core of our tripartite system of government is the principle that the power of each branch must know limits. Wisconsin governors have perhaps more extensive power to alter legislation than do any other state governors. But a governor's power to craft legislation necessarily must have constitutional limits. A write-in veto power which extends beyond the reduction of appropriation amounts intrudes too far into the constitutional grant of legislative power vested in the Senate and the Assembly. Wis. Const. art. IV, § 1.

---

[16] The evil was "the practice of jumbling together in one act inconsistent subjects in order to force a passage by uniting minorities with different interests when the particular provisions could not pass on their separate merits." *State ex rel. Martin v. Zimmerman*, 233 Wis. 442, 447–48, 289 N.W. 662 (1940).

¶ 44. In the 60 years since *Finnegan* we have rarely been called upon to determine whether a provision is an appropriation or a bill is an appropriation bill such that the partial veto is available to a governor. Because Wisconsin bill drafters follow the statutory directive to list appropriations in ch. 20, and because we have the benefit of the clear *Finnegan* rule, we avoid the repeated need to resolve this question. Under the Governor's proposal the courts would be pressed to determine anew in each case whether a provision was an appropriation. This course should be avoided.

¶ 45. The Governor advances no argument to explain or distinguish the reasoning or holding of *Finnegan*. Applying the teachings of *Finnegan* to this case we must conclude that the monetary figure in the second sentence in issue here is not an appropriation amount. Nor does the interrelationship of that provision with the statutory scheme transform the provision into an appropriation amount.

¶ 46. We reject the Governor's expansive view of what constitutes an appropriation for purposes of his write-in veto authority. A governor can strike parts of a bill if that bill contains an appropriation. Only when a governor seeks to exercise the write-in veto is this partial veto power limited further. The constitution, as interpreted by *C.U.B.* and *Finnegan*, cabins the write-in veto power to monetary figures which are themselves appropriation amounts.

## IV.

¶ 47. Aside from the teachings of *Finnegan*, we are unpersuaded by the Governor's proposed expansive and flexible definition of appropriation because (1) it is in conflict with the court's interpretation of the word

appropriation in a related constitutional provision; (2) it is in conflict with the Governor's veto message explaining the partial veto of section 57; and (3) it would disturb a core principle of our art. V, § 10 jurisprudence.

██

¶ 48. First, the Governor's position contravenes other case law. The word "appropriation" appears in several other provisions in the Wisconsin constitution.[17] Although the interpretation of a word used in a constitutional provision is not determinative of the word's meaning in all constitutional provisions, it may prove helpful. *McDonald v. State*, 80 Wis. 407, 50 N.W. 185 (1891), raised the issue of the meaning of the word appropriation as used in art. VIII, § 8.

¶ 49. In *McDonald* a criminal defendant challenged his conviction on the ground that the bill creating the fifteenth judicial circuit, in which he was prosecuted, was not enacted pursuant to the mandates of art. VIII, § 8. Thus, the court was called upon to determine whether the bill made, continued or renewed an appropriation.

¶ 50. McDonald argued that because the bill created a judgeship which necessarily would be funded from existing appropriations without further legislative action, the bill made an appropriation for purposes of art. VIII, § 8. The court concluded that the provision creating the judgeship was not an appropriation because it did not in itself appropriate funds. *Id.* at

---

[17] Art. VIII, § 2 states that "[n]o money shall be paid out of the treasury except in pursuance of an appropriation by law." Art. VIII, § 8 provides that any law which "makes, continues or renews an appropriation of public or trust money" requires a three-fifths quorum and a vote of yeas and nays entered in the journal.

412–13. The bill's indirect effect on an existing appropriation was not enough to transform this provision into an appropriation.

¶ 51. The *McDonald* rule is consistent with *Finnegan*. A necessary relation between the provision in issue and another provision which is an appropriation does not transform the provision in issue into an appropriation.

¶ 52. Second, the Governor's position in the case at bar, that the figure in the second sentence is an appropriation amount, conflicts with the position the Governor took in his veto message explaining the write-in veto of section 57.[18] The Governor's veto message to the legislature clearly distinguished the two

---

[18] The Governor reported his objections to the disapproved parts as follows:

The revenue obligation limit and appropriation level in the bill reflect actions by the Legislature to provide $40,000,000 in additional revenue bonding authority over the 1995–97 biennium to replace anticipated decreases in federal highway aid. I object to this increase in bonding authority because it does not reflect sound fiscal management of the transportation fund. This additional bonding authority contributes to increasing the share of the major highway program funded from revenue bond proceeds from the historical 55% to almost 75%. Furthermore, this additional amount of borrowing for infrastructure projects presents problems for future transportation budgets. Prudent financial management demands that debt be balanced with sufficient revenues. Replacing declining federal aid primarily with bond proceeds will divert limited future transportation fund revenues for debt service. *By vetoing the revenue obligation limit established under s. 84.59(6) and writing in a smaller amount that deletes the $40,000,000 increase in bonding authority, I am vetoing the increase of the revenue obligation limit. By vetoing the Department of Transportation's appropriation under s. 20.395(3)(br) and writing in a smaller amount that deletes the $20,000,000 SEG-S [segregated service funds, see Wis. Stat. § 20.001(2)(da)] in each fiscal year of the 1995–97 biennium, I am vetoing the authorization to expend proceeds of revenue obligations issued under this increase in the*

write-in vetoes, one of the section 57 revenue obligation limit increase and the other of an item in the § 20.005(3) appropriations schedule. Although the Governor clearly saw the two as interrelated, he clearly characterized the bond provision as a revenue raising provision and the § 20.005(3) provision as an appropriation. He did not characterize the revenue obligation limit to be an appropriation.

¶ 53. Aside from these two considerations and considerations of *stare decisis*, we adhere to *Finnegan* because it is a sound interpretation of the Wisconsin constitution. The Governor asks us to find an appropriation by analyzing the complex interrelation of various statutes so that what appears to be an amount authorizing bonding is actually an appropriation amount. The dangers of the Governor's approach are obvious.

¶ 54. Were we to agree with the Governor's expansive reading that a monetary sum "interrelated" with an appropriation is an appropriation we would expand the definition of the constitutional term "appropriation bill" and the governor's partial veto power beyond the limits recognized in *Finnegan* and the court's subsequent holdings. This we are not free to do.

¶ 55. If a provision authorizing the raising of revenue can be considered an appropriation amount, there would be no discernible distinction, certainly no clearly applicable one, with which to differentiate appropria-

---

*revenue obligation limit.* I am also requesting the Department of Administration Secretary not to allot these funds.

Veto message at 1 (emphasis added).

The parties, by stipulation, attached a portion of the Governor's veto message as an appendix to the petitioners' brief. The appendix did not include the language quoted above. The entire veto message is on file at the Wisconsin Legislative Reference Bureau, Madison, WI.

tion bills from all other bills. Much, if not all, legislation would be susceptible to the partial veto, perhaps even to a governor's write-in veto, because much, if not all, legislation can affect and be interrelated with the appropriation of money.

¶ 56. By adopting the Governor's position we would be abandoning *Finnegan*'s bright line rule for determining what is an appropriation and what is an appropriation bill. A bright line rule is especially suitable when the court is called upon, as we are in veto cases, to referee disputes between our co-equal branches of government. In such disputes the constitution must have intended that whenever possible a court provide clear guidance to the other two branches to preclude continuing judicial involvement in and the need for frequent judicial resolution of inter-branch disputes.

¶ 57. The *Finnegan* bright line rule affords the legislature and the Governor the ability to predict the consequences of their actions and to guide their conduct accordingly without the intercession of the judicial branch. The separation of powers principle operates best when the judiciary is not continually called upon to resolve conflicts between the other two branches. The large volume of veto litigation is not a sign of a healthy discourse on state constitutional law. It indicates that the branches have been unable to resolve the issues with clarity.

¶ 58. We disagree with the Governor's suggestion that the constitution intended a flexible rule defining an appropriation amount subject to the write-in veto and therefore defining an appropriation bill subject to the partial veto. Far from giving us reason to revisit the *Finnegan* "four corners" approach, 60 years

of partial veto cases, including the present one, demonstrate the need to reaffirm the *Finnegan* principles.

**██**

¶ 59. We conclude that the Wisconsin constitution does not authorize the Governor to disapprove parts of legislation by writing in new numbers except when the part disapproved is a monetary figure which expresses an appropriation amount in an appropriation bill and the inserted number is a lesser appropriation amount.[19] Figures in appropriation bills which are not themselves appropriation amounts but which affect and are closely interrelated with an appropriation are not subject to the write-in veto.

*By the Court.*—Rights declared.

¶ 60. N. PATRICK CROOKS, J. (*dissenting*). The majority holds that "the Wisconsin constitution does not authorize the Governor to disapprove parts of legislation by writing in new numbers except when the part disapproved is a monetary figure which expresses an appropriation amount in an appropriation bill and the inserted number is a lesser appropriation amount." Majority op. at 204. In determining the limitations to the governor's partial veto power, the majority distinguishes between monetary figures in appropriation bills that are appropriation amounts, which are subject to the partial veto power, and monetary figures in appropriation bills that "affect and are closely interre-

---

[19] It is of no import whether the appropriation amount is expressed in numerals or numeric words. The court has addressed this issue as follows: "it is not the underlying conceptual framework that matters, rather, what matters is the distinction between an appropriation sum and a non-appropriation sum." *C.U.B.*, 194 Wis. 2d at 506 n.13 (citation omitted).

lated with an appropriation," which are not subject to such power. *Id.* I do not join the majority opinion because I do not agree that the court in *Citizens Utility Board v. Klauser*, 194 Wis. 2d 484, 510, 534 N.W.2d 608 (1995) (hereinafter "*C.U.B.*"), recognized such a distinction.

¶ 61. I also do not join the majority opinion because I do not agree that in *State ex rel. Finnegan v. Dammann*, 220 Wis. 143, 264 N.W. 622 (1936), the court "construed the constitution as barring exercise of the partial veto power on **parts** of any bill which 'does not within its four corners contain an appropriation.'" Majority op. at 197 (emphasis added). The *Finnegan* court held that the exercise of the partial veto power does not extend to any **bill** that does not contain an appropriation within its four corners, not that such power does not extend to any **part** of an appropriation bill that does not contain an appropriation within the four corners of that part. 220 Wis. at 147–49.

I.

¶ 62. The power of the governor to approve appropriation bills in part, as provided by the 1930 amendment to article V, section 10(1) of the Wisconsin Constitution, is a "uniquely broad and expansive power." *State ex rel. Wisconsin Senate v. Thompson*, 144 Wis. 2d 429, 450, 424 N.W.2d 385 (1988). For example, in *State ex rel. Wisconsin Telephone Co. v. Henry*, 218 Wis. 302, 315, 260 N.W. 486 (1935), this court stated: "[T]here is nothing in [art. V, sec. 10] which warrants the inference or conclusion that the governor's power of partial veto was not intended to be as coextensive as the legislature's power to join and enact separable pieces of legislation in an appropriation bill." The partial veto power provides the governor

204

with a "quasi-legislative" authority, *State ex rel. Sundby v. Adamany*, 71 Wis. 2d 118, 134, 237 N.W.2d 910 (1976), in that the governor can affirmatively legislate by exercising this power. *Wisconsin Senate*, 144 Wis. 2d at 453.

¶ 63. The grant of partial veto power was partially "aimed at achieving joint exercise of legislative authority by the governor and the legislature over appropriation bills. It gave the governor a constitutionally recognized role in the legislative budgetary function." *Id.* at 454. Accordingly, the underlying purpose of the 1930 constitutional amendment was to give the governor strong authority to control spending. As this court has stated: "[A]n important rationale of the partial veto is clearly linked to expenditure reduction and fiscal balance." *C.U.B.*, 194 Wis. 2d at 509.

¶ 64. Along these lines, this court has held that the governor has the power to veto **any part** of an appropriation bill, regardless of whether such part is an appropriation amount. *Sundby*, 71 Wis. 2d at 130; *Henry*, 218 Wis. at 314–15. We have also held that the governor can strike words, phrases, and digits from an appropriation bill. *Wisconsin Senate*, 144 Wis. 2d at 457. Furthermore, this court has determined that "the governor has the power to approve part of an appropriation bill by reducing the amount of money appropriated so long as the number is part of the original appropriation." *C.U.B.*, 194 Wis. 2d at 510. Regardless of the manner in which the governor exercises the partial veto power, the result must be that the remaining part of the bill is a complete, workable law. *State ex rel. Martin v. Zimmerman*, 233 Wis. 442, 450, 289 N.W.2d 662 (1940).

¶ 65. In the present case, Petitioners concede that Section 57 was an appropriation bill, and that

Governor Thompson had the power to strike the monetary figure at issue. Petitioners only question whether the Governor had the power to write in a different, smaller amount in the second sentence of section 57. Thus, the pertinent inquiry is: Under what circumstances did the *C.U.B.* court determine the governor can exercise his or her write-in veto power?

¶ 66. In *C.U.B.*, this court considered whether the partial veto power authorizes the governor to strike an appropriated sum contained within an appropriation bill and insert a different, smaller number as the appropriated sum. 194 Wis. at 488. The court held that the governor "may strike a numerical sum set forth in an appropriation and insert a different, smaller number as the appropriated sum." *Id.* at 504. The *C.U.B.* court did not determine that this write-in veto power does not similarly extend to a monetary figure that is inseparably connected to an appropriation amount, or to such figures "which affect and are closely related with an appropriation." Majority op. at 204. The *C.U.B.* decision reflects the fact that the write-in veto at issue there involved **only** an appropriation amount.

¶ 67. Although the *C.U.B.* court did not determine that the write-in veto power does not extend to a monetary figure that is inseparably connected to an appropriation amount, the majority concludes that this is a proper reading of *C.U.B.* However, this interpretation, in its application here, is contrary to common sense. Consider the effect of the majority's conclusion that the write-in veto is not valid. The majority concludes that the Governor may strike the monetary sum in the second sentence of section 57, but may not write in a different, smaller amount. In the third sentence, the Governor struck the same figure and wrote in the same new figure as he did in the second sentence of

section 57. He also struck and wrote in other figures in the third sentence as well.[1] If the governor may use the write-in veto power in regard to monetary amounts in the third sentence, but not the second sentence, the following is the result:

> Section 57. 84.59(6) of the statutes is amended to read:
>
> 84.59(6) Revenue obligations may be contracted by the building commission when it reasonably appears to the building commission that all obligations incurred under this section can be fully paid from moneys received or anticipated and pledged to be received on a timely bases. Revenue obligations issued under this section shall not exceed ——— in principal amount, excluding obligations issued to refund outstanding revenue obligations. Not more than $1,041,341,000 of the $1,083,638,100 may be used for transportation facilities under s. 84.01(28) and major highway projects under ss. 84.06 and 84.09.

¶ 68. Therefore, in accord with the reasoning of the majority, the building commission has no authority to raise the revenue through bonding, because the Governor has struck this amount. Yet, the provisions in the third sentence that allocate the money remain intact.[2]

---

[1] The majority indicates that the write-in vetoes in the third sentence "were not challenged or discussed in the briefs by either party." Majority op. at 186. Accordingly, the governor's striking of the original number in the third sentence, and his writing in of a different, smaller number, will be unaltered.

[2] The majority contends that the third sentence places a limit on the purposes for which the revenue raised may be used. Majority op. at 194. However, the third sentence is not merely a use limitation. Rather, it is an appropriation, because it sets apart a portion of public funds for a public purpose or specified

¶ 69. The majority's interpretation of article V, section 10 of the Wisconsin Constitution is not consistent with the budgetary control rationale underlying the governor's power, contrary to its contention. *See* majority op. at 198. Instead, this interpretation leads to an absurd result in the budget, and a bill which is not a "complete, workable law." *See Martin*, 233 Wis. at 450.

¶ 70. In addition, I do not agree that, if the write-in veto power extends to sentence two, this will intrude too far into the constitutional grant of legislative power vested in the Senate and Assembly. *See* majority op. at 198. The Governor undisputedly can strike the entire figure of "$1,123,638,100" from sentence two, or can change it to a variety of smaller amounts, such as $123,638,100, $638,100, or $100. Since the Governor possesses such authority, then why does the majority find it to be an intrusion upon the legislative power when he reduces such an amount by writing in a smaller figure? As the *C.U.B.* court determined: "Simply put, to accept the conclusion that the governor has the authority to strike digits from an appropriation bill, but not the authority to write in smaller digits, elevates form over substance in contravention of common sense and case law." *C.U.B.*, 194 Wis. 2d at 507. Likewise, as the petitioners in *Wisconsin Senate* recognized: "It is difficult to imagine what public purpose or policy might be served by permitting a governor to reduce appropriations but restricting the reductions to the limited subset of figures derivable from the digits in a particular appropriation." Petitioner's brief in *Wisconsin Senate* at 43, *quoted in C.U.B.*, 194 Wis. 2d at 507 n.15.

---

object. *See State ex rel. Kleczka v. Conta*, 82 Wis. 2d at 679, 689, 264 N.W.2d 539 (1978) (quoting *Finnegan*, 220 Wis. at 148).

¶ 71. Moreover, the majority approach results in the governor's power to disassemble legislation **not** being coextensive with the legislature's power to assemble it. This directly contradicts established precedent, in which this court has recognized that the partial veto power is a broad and expansive authority, a quasi-legislative power that gives the governor joint authority with the legislature to approve and veto appropriation bills. *Wisconsin Senate*, 144 Wis. 2d at 450, 453; *Sundby*, 71 Wis. 2d at 134; *Henry*, 218 Wis. at 315.

¶ 72. Accordingly, I am convinced that, after reading the *C.U.B.* decision, the *C.U.B.* court did not intend to draw a sharp distinction between "non-appropriation" and "appropriation" amounts in determining a limitation on the exercise of the partial veto power, especially when the amount at issue is inseparably connected to an appropriation amount. Instead, I am persuaded that, pursuant to *C.U.B.*, the governor's write-in veto power extends to: (1) any monetary sum; (2) in an appropriation bill; (3) if the monetary sum is an appropriation or is inseparably connected to an appropriation.[3] Support for this conclusion is found in the following language from *C.U.B.*: "We conclude that the governor, acting within the scope of his power

---

[3] The term "inseparably connected" was originally used by this court in *Henry*, 218 Wis. at 309, the first case challenging the governor's veto power. However, the *Henry* court found it unnecessary to consider whether the governor's partial veto power extends to provisos or conditions that are "inseparably connected" to an appropriation bill. Instead, the *Henry* court found that the governor's partial veto power extends to any part of an appropriation bill. Nonetheless, it is logical to consider this distinction, in order to achieve a rational, logical application of *C.U.B.* to the present case.

derived from Art. V., sec. 10 of the Wisconsin Constitution, may strike a **numerical sum** set forth in an appropriation and insert a different, smaller number as the appropriated sum;" and, "Succinctly stated, the governor has the power to approve part of an appropriation bill by reducing the amount of money appropriated so long as the number is part of the original appropriation. This power stems from the right to reduce appropriations recognized in *Wisconsin Senate* and extends only to **monetary figures** and is not applicable in the context of any other aspect of an appropriation." *C.U.B.*, 194 Wis. 2d at 504, 510 (emphasis added). Upholding the write-in veto power under the circumstances outlined herein is consistent with a rational, logical interpretation of *C.U.B.*

¶ 73. Furthermore, this interpretation is in accord with the concerns the *C.U.B.* court indicated it considered in recognizing a limitation to the write-in veto. Specifically, the *C.U.B.* court determined that the write-in veto power does not extend to parts of an appropriation bill that are conceptually different than monetary figures, such as dates, times, counties, cities, groups, and so forth. 194 Wis. at 509. This is demonstrated by the court's clear instruction that the governor cannot use such power to change "year" to "ten days," or "State of Wisconsin" to "City of Milwaukee." *C.U.B.*, 194 Wis. 2d at 504, 508–09. This is further illustrated by the colloquy cited in the majority opinion. As counsel for the Governor explained, the write-in veto cannot be exercised to change "15 days" to "10 days." Yet, counsel also emphasized that "at the core of the partial veto power are **dollars**." Majority op. at 189 (emphasis added).

¶ 74. Under the three-part test set forth above, the write-in veto in the present case is valid. The

vetoed portion of the bill, "$1,123,638,100," is a monetary figure. It is contained in section 57 of the transportation budget, which is concededly an appropriation bill. It also is inseparably connected to an appropriation. Specifically, an appropriation is defined as "the setting apart a portion of public funds for a public purpose." *Finnegan*, 220 Wis. at 148 (quoting *State v. LaGrave*, 41 P. 1075, 1076 (Nev. 1895)). In reading sentence two of section 57 in conjunction with sentence three, it becomes clear that the vetoed portion is inseparably connected with the setting aside of public funds for the public purpose of transportation projects and facilities. Sentence two must be read in conjunction with sentence three, not isolated and removed from the entire section. Furthermore, not only is the second sentence inseparably connected with the third sentence, but it is also inseparably connected with the entire transportation budget. The second sentence is inseparably connected to the entire budget because it authorizes funding for various specific transportation projects and facilities.

## II.

¶ 75. Upholding the write-in veto power under the circumstances outlined herein is not beyond the limits recognized in *Finnegan*. *See* majority op. at 193–199, 202. First, the majority asserts that the *Finnegan* court rejected the argument that the veto power extends to parts of an appropriation bill that are inseparably connected to an appropriation. Majority op. at 196–197. It did not. In *Finnegan*, the court rejected the argument that a bill is an appropriation bill if it is inseparably connected to appropriations in other bills. Second, the majority contends that the *Finnegan* court "construed the constitution as barring

211

exercise of the partial veto power on **parts** of any bill which 'does not within its four corners contain an appropriation.' " Majority op. at 197 (emphasis added). Again, this is not an accurate statement of the holding in *Finnegan*. The *Finnegan* court held that the governor's partial veto power does not extend to any **bill** that does not contain an appropriation within its four corners, not any **part of a bill** that does not contain an appropriation within its four corners.

¶ 76. Furthermore, *Finnegan* is distinguishable from the present case. In *Finnegan*, the court considered whether the bill at issue was an appropriation bill. In so doing, the court indicated that *Henry* was not determinative, because the bill at issue in *Henry* was concededly an appropriation bill. Likewise, because the bill at issue in the present case is concededly an appropriation bill, *Finnegan* is not determinative here.

¶ 77. Finally, contrary to the majority's assertions, recognizing that the governor's write-in veto power extends to circumstances set forth herein will not expand the definition of an appropriation bill. Majority op. at 202. In order for the write-in veto authority to apply, the bill at issue **must** be an appropriation bill. In other words, the bill must set aside public revenue for a public purpose or specified object, under *Finnegan* and its progeny. Therefore, the established definition of "appropriation bill" would not be at risk of being expanded.

¶ 78. Thus, for all of these reasons, I conclude that the write-in veto power properly extends to monetary amounts in an appropriation bill that are an appropriation, or are inseparably connected with an appropriation, as are the monetary figures in the second sentence of section 57. Such a conclusion is consistent with a logical, rational, and common sense

reading of *C.U.B.*, and is in accord with established precedent.

¶ 79. I am authorized to state that Justice DONALD W. STEINMETZ and Justice JON P. WILCOX join this dissent.